479 F.2d 20
 73-2 USTC P 9581
 Clifford IRVING et al., Plaintiffs-Appellants,
v.
Elliot H. GRAY, District Director of Internal Revenue,
District of Manhattan, and Clarence I. Fox,
Director of International Operations of
the Internal Revenue Service,
Defendants-Appellees.
 No. 629, Docket 72-2153.
 United States Court of Appeals,
Second Circuit.
 Argued April 4, 1973.
Decided June 1, 1973.
 
 Geoffrey M. Kalmus, New York City (Maurice N. Nessen, and Harold P. Weinberger, New York City, of counsel), for plaintiffs-appellants.
 Scott P. Crampton, Asst. U. S. Atty. Gen., Washington, D. C. (Whitney North Seymour, Jr., U. S. Atty., for the S. D. New York; David P. Land, Milton Sherman, Asst. U. S. Attys., Meyer Rothwacks, John J. McCarthy, Crombie J. P. Garrett, George F. Lynch, Attys., Tax Div., Dept. of Justice, Washington, D. C., of counsel), for defendants-appellees.
 Before KAUFMAN, Chief Judge, and ANDERSON and OAKES, Circuit Judges.
 OAKES, Circuit Judge:
 The appellants, Clifford and Edith Irving and Richard Suskind, maintain that the Internal Revenue Service, while seizing the appellants' funds for taxes which were in jeopardy, failed to follow the procedures for such assessments mandated by the Internal Revenue Code and must therefore, return the seized funds to be distributed among appellants' creditors. The district court's opinion, favoring the IRS, is printed at 344 F.Supp. 567 (S.D.N.Y.1972) (Frankel, J.).
 
 
 1
 The appellants were participants in the "Hughes hoax." This, as everyone knows, was a scheme by Clifford Irving and Richard Suskind to write and sell and "authorized" version of the life of billionaire recluse Howard Hughes, when in fact there was no authorization therefor by Hughes. McGraw-Hill, Inc., the duped publishing house, contracted with Irving to purchase this book. During 1971 McGraw-Hill made payments to Irving totaling $765,000-$100,000 as advance royalties, $15,000 for expenses, and $650,000 in checks made out to Howard Hughes for supposedly participating in and authorizing the work. Most of the $650,000 was placed in a Swiss bank account by Edith Irving who used assumed names and false papers to convince the bank that the checks to Hughes were made out to her.
 
 
 2
 Before the book was published the hoax was discovered. All three received various federal and state sentences in June of 1972. Subsequently Mrs. Irving received a Swiss sentence also.
 
 
 3
 While the hoax was being discovered and the Irvings and Suskind were maintaining their innocence, they were residents of Ibiza. The Internal Revenue Service, fearing that the appellants would take what money they had in the United States and flee without paying income taxes, took action to safeguard the United States tax interest in those assets consisting of moneys held by Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch). On February 4, 1972, while federal and state grand juries were investigating the hoax, the IRS sent letters addressed to appellants which declared the taxable period from January 1 to December 31, 1971, immediately terminated and their income tax for that period immediately due and payable. Pursuant to the provisions of Sec. 6201(a) of the Code, the Internal Revenue Service immediately assessed the amounts declared to be due. The total taxes assessed were $512,111, of which $243,118 was assessed against Edith Irving, $246,993 against Clifford Irving and $22,000 against Richard Suskind. On the same date, the Service served notices of levy on Merrill Lynch, demanding payment of the amounts held in the taxpayers' securities accounts. Pursuant to the levies, Merrill Lynch subsequently forwarded to IRS the total amount of $91,322.92; $86,458.18 from Edith Irving's account; and $4,864.74 from Richard Suskind's account. It is this money which the taxpayers claim was improperly taken and must be either deposited with the district court or redeposited with Merrill Lynch, to be available for all creditors, including McGraw-Hill and counsel.
 
 
 4
 At the time that the taxpayers instituted this action, they had not yet filed income tax returns for the year 1971, although they could have done so at any time after February 4, 1972, when the Service declared their 1971 taxes immediately to be due. Instead, they waited until the last permissible day, June 15, 1972, to file their returns. In lieu of filing a tax return the taxpayers filed a request with IRS for an administrative revenue ruling. In their request, they sought to reduce their 1971 taxable income in respect to the $765,000 embezzled from McGraw-Hill, and the right to future income tax deductions for all amounts not exceeding $765,000 which they might repay to McGraw-Hill.
 
 
 5
 There are two questions worthy of discussion. The first is whether the IRS had sufficient authority under Sec. 6851 of the Internal Revenue Code of 1954 to bill the taxpayers and levy on their Merrill Lynch accounts or whether IRS had to act under the authority of Sec. 6861. The second is whether the IRS could employ Sec. 6851 to terminate a preceding taxable year and, if not, whether this technical error entitled the taxpayers to injunctive relief.
 
 
 6
 The taxpayers maintain that the IRS's action against them constituted the assessing of a deficiency under Sec. 6861.[1] Section 6861(b) requires that if a jeopardy assessment under Sec. 6861(a) is made then the Secretary of the Treasury or his delegate must send the assessed taxpayer a notice of deficiency within 60 days of the assessment. Such a deficiency notice allows the assessed taxpayer to file a petition in the United States Tax Court seeking a redetermination of the deficiency. When the IRS determines a deficiency and fails to issue a deficiency notice, then pursuant to Sec. 6213(a)[2] tax collection may be enjoined. To support their position that they were entitled to deficiency notices pursuant to Sec. 6861(b), the taxpayers rely upon Schreck v. United States, 301 F.Supp. 1265 (D.Md.1969), a case in which no appealable order has yet been entered but which has concededly been followed by three other district courts. Lisner v. McCanless, 356 F.Supp. 398 (D.Ariz 1973) (appeal pending); Rambo v United States, 353 F.Supp. 1021 (W.D. Ky.1972) (appeal pending); Clark v. Campbell, 341 F.Supp. 171 (N.D.Tex. 1972). In Schreck as in this case, the IRS, acting pursuant to Sec. 6851(a),[3] terminated the taxpayer's taxable year prior to the end of the calendar year. The taxpayer filed a suit in the district court seeking injunctive relief because the IRS failed, as here, to issue a notice of deficiency.
 
 
 
 * * *
 Schreck's holding that IRS was required to issue a notice was based on two erroneous premises. First, it reasoned that since Sec. 6851 contains no independent assessment authority, the assessment was necessarily made pursuant to Sec. 6861(a). But Sec. 6201(a)[4] is an alternative authorization for IRS assessment which requires no deficiency letter. Section 6201(a), which along with Sec. 6851 existed prior to Sec. 6861,[5] allows the IRS to make an assessment without waiting until the taxpayer has made a deficient payment of his income taxes. We agree with Williamson v United States, 31 Am.Fed.Tax R.2d 73-800 (7th Cir. 1971), in which the Seventh Circuit stated:
 . . . the deficiency notice requirement cannot be read into Sec. 6851 because the assessment made under the section is not a deficiency as defined in Sec. 6211. That section defines a deficiency as the amount by which the "tax imposed" exceeds the amount shown on the tax return. The assessment in this case was not an imposed tax, but merely an amount which the I.R.S. believed justified the termination of the taxable year. Since no return had been filed at the date of the assessment, no deficiency was determinable.
 See also Parrish v. Daly, 350 F.Supp. 735, 736 (S.D.Ind.1972). Williamson receives support from three tax court cases which ruled that taxes declared to be due and owing pursuant to the provisions of Sec. 6851, and its predecessor provisions, do not constitute deficiencies within the meaning of the Internal Revenue Code. Puritan Church-The Church of America v. Commissioner, 10 CCH Tax Ct.Mem. 485 (1951), aff'd per curiam, 93 U.S.App.D.C. 129, 209 F.2d 306 (1953), cert. denied, 347 U.S. 975, 74 S.Ct. 787, 98 L.Ed. 1115 (1954); Ludwig Littauer & Co. v. Commissioner, 37 B.T.A. 840 (1938); DaBoul v. Commissioner, 429 F.2d 38 (9th Cir. 1970) (affirming the order of the Tax Court dismissing the taxpayer's petition). We believe that the reasoning of Williamson and Parrish is correct and that the assessment made by IRS here was not a deficiency assessment governed by Sec. 6861. Sections 6861 and 6213(a) do not apply in the case of a jeopardy assessment made in respect to a departing or concealing taxpayer assessed under Sec. 6201(a) pursuant to Sec. 6851(a).
 The second erroneous premise of Schreck was that no forum other than the Tax Court may be available to adjudicate partial tax determinations made by the IRS pursuant to Sec. 6851(a). But this premise like the first was based on the incorrect belief that a tax deficiency had been determined and charged. Here, as explained above, no deficiency has yet been determined and the taxpayers therefore do not yet have the opportunity to petition the Tax Court. The taxpayers are not without remedy, however, for they could have had their complaint of an overpayment heard in the district court below if they had filed full-year returns reporting overpayments of tax; they could have commenced plenary refund actions six months after filing the returns. Treas. Reg. Sec. 301.6402-3(b) (1958); Int.Rev. Code of 1954 Secs. 7422(a) & 6532(a).[6]
 The taxpayers' second argument is that the IRS cannot use Sec. 6851 to terminate a taxable year which has, in a calendar sense, already ended. Here the IRS used Sec. 6851 on February 4, 1972, to declare all taxes for 1971 immediately due, and its action was perfectly proper. Section 6851(a) on its face clearly permits such action when it says that the "Secretary or his delegate shall declare the taxable period . . . immediately terminated" on the "income tax for the current or the preceding taxable year" (emphasis added). Appellants argue that Sec. 6851 requires that to make the 1971 tax immediately due IRS should have declared the taxable period from January 1, 1972, to February 4, 1972, "immediately terminated." We do not read Sec. 6851(a) so rigidly. The very case upon which the taxpayers rely, United States v. Johansson, 62-1 U.S. Tax Cas. p 9130 at 83,197 (S.D.Fla. 1961), aff'd in part and remanded in part, 336 F.2d 809 (5th Cir. 1964), supports instead the Government's position. There the IRS terminated the boxer Johansson's 1960 calendar tax year in February of 1961. Soon afterward, in March of 1961, following another heavyweight title fight, the IRS filed an amended complaint to terminate Johansson's 1961 taxable year. Thus Johansson appears to be on all fours with this case. Nor does our interpretation of Sec. 6851(a) mean, as appellants contend, that the IRS may terminate "any taxable period it chose" without using Sec. 6861 procedures and thereby giving taxpayers "tickets to the Tax Court." Section 6851(a) refers only to "the current or the preceding taxable year," in this case short-period 1972 or 1971. The important point is that Sec. 6851 was enacted to allow the IRS to prevent taxpayers from fleeing the country with taxable funds. Here the taxpayers do not maintain that the IRS did not have probable cause to believe that the taxpayers were likely to flee. Under such circumstances Congress has given IRS a little leeway to protect the revenues.[7]
 The taxpayers may, of course, eventually prevail in their claim that the IRS has claimed more to be due than actually is due. But this is a question to be litigated in due course after the taxpayers have filed their tax returns. As stated by the court below in rejecting the taxpayers' requests for equitable relief, ". . . it is bearable inequity that those whose 'bold plans' are frustrated may suffer potentially costly inconveniences." 344 F.Supp. at 573. In any event, because the taxpayers have an adequate legal remedy to recover any excessive taxes charged by the IRS, because there was no deficiency assessment made, and because they do not come before us with clean hands we would not be able to grant them injunctive relief even if we believed that they had been assessed too much by the IRS. Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).
 Judgment affirmed.
 
 
 [1]
 Sec. 6861. Jeopardy assessments of income, estate, and gift taxes
 (a) Authority for making.-If the Secretary or his delegate believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary or his delegate for the payment thereof.
 (b) Deficiency letters.-If the jeopardy assessment is made before any notice in respect of the tax to which the jeopardy assessment relates has been mailed under section 6212(a), then the Secretary or his delegate shall mail a notice under such subsection within 60 days after the making of the assessment.
 Int.Rev.Code of 1954, Sec. 6861(a), (b).
 
 
 [2]
 Sec. 6213. Restrictions applicable to deficiencies; petition to Tax Court
 (a) Time for filing petition and restriction on assessment.-Within 90 days, or 150 days if the notice is addressed to a person outside the States of the Union and the District of Columbia, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B or chapter 42 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421 (a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court.
 Int.Rev.Code of 1954, Sec. 6213(a).
 
 
 [3]
 Sec. 6851. Termination of taxable year
 (a) Income tax in jeopardy.-
 (1) In general.-If the Secretary or his delegate finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the income tax for the current or the preceding taxable year unless such proceedings be brought without delay, the Secretary or his delegate shall declare the taxable period for such taxpayer immediately terminated, and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of such tax as is unpaid, whether or not the time otherwise allowed by law for filing return and paying the tax has expired; and such taxes shall thereupon become immediately due and payable. In any proceeding in court brought to enforce payment of taxes made due and payable by virtue of the provisions of this section, the finding of the Secretary or his delegate, made as herein provided, whether made after notice to the taxpayer or not, shall be for all purposes presumptive evidence of jeopardy.
 Int.Rev.Code of 1954, Sec. 6851(a)(1).
 
 
 [4]
 Sec. 6201. Assessment authority
 (a) Authority of Secretary or delegate.-The Secretary or his delegate is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law, which have not been duly paid by stamp at the time and in the manner provided by law . . ..
 Int.Rev.Code of 1954, Sec. 6201(a).
 
 
 [5]
 Section 250(g) of the Revenue Act of 1918, 40 Stat. 1084, is almost identical to Sec. 6851; Sec. 6861 was enacted into law as Sec. 279 of the Revenue Act of 1926, 44 Stat. 59
 
 
 [6]
 At any time after February 4, 1972, when the IRS made its assessments and collected taxes, the taxpayers could have filed income tax returns for the year 1971, reporting overpayments of taxes. As early as August 5, 1972, therefore, they could have commenced refund actions. Taxpayers argue that Flora v. United States, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), aff'd on rehearing, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), requires that the full amount of an assessment be paid before a claim for refund suit under 28 U.S.C. Sec. 1346(a)(1) may be filed. The Flora "full payment" rule is inapplicable here, however, since there a deficiency had been determined and taxpayer had paid only a portion of it before seeking his refund claim in a federal district court. Here, as we have said, no deficiency has yet been determined
 
 
 [7]
 In oral argument the taxpayers raised the additional contention that the wording of Sec. 6658, dealing with a penalty tax for attempts to violate Sec. 6851, demonstrates that assessments under Sec. 6851 as well as under Sec. 6861 are deficiency assessments and therefore require a notice of deficiency. The taxpayers apparently have missed the significance of the fact that Sec. 6658 states that a penalty tax shall be imposed on the "amount of the tax [due] or deficiency in the tax." (Emphasis supplied.) The "or" in this language supports our reasoning that there has not been a deficiency asserted here and makes the taxpayers' reliance upon Sec. 6658 unavailing