**Sharon WILLITS, Plaintiff,**

v.

**W. L. RICHARDSON and A. J. O'Donnell, Defendants.**

No. 73-918-Civ.

United States District Court, S. D. Florida.

July 11, 1973.

George D. Gold, Miami, Fla., for plaintiff.

Francis P. Dicello, Dept. of Justice, Tax Div., Washington, D. C., and Mervyn L. Ames, Miami, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER

FULTON, Chief Judge.

This case came on for hearing on July 6, 1973, on the complaint and motion for emergency hearing and temporary and mandatory injunction filed by the plaintiff, Sharon Willits. The plaintiff sought the return of certain money and other personal property seized by the United States Internal Revenue Service in its efforts to collect certain taxes alleged to be due from the plaintiff. The United States moved to dismiss this action for lack of jurisdiction.

Based on the evidence presented in these proceedings, this Court finds that on May 24, 1973, officers Mosher and Ahearn of the City of Miami Police Department, while driving in an unmarked vehicle, began pursuing the plaintiff, Sharon Willits, who was driving a 1972 Cadillac in the vicinity of the 79th Street Causeway in Miami. Upon becoming aware that she was being followed by an unmarked car, the plaintiff pulled over to the side of the street momentarily and the unmarked car pulled in behind her. No one emerged from the unmarked car and the plaintiff pulled away from the side of the curb and the unmarked car containing officers Ahearn and Mosher continued following the plaintiff. The plaintiff then pulled over a second time when the unmarked car pulled up beside her and she noticed police badges being waved at her by the occupants of the unmarked car. Officer Ahearn then emerged from the unmarked car and approached the plaintiff. Officer Ahearn was not in uniform and was dressed in very casual clothes. He had a full beard and long frizzled hair which was tied in a ponytail in back. Officer Mosher also emerged from the car and was dressed in a manner similar to that of Officer Ahearn.

Upon identifying himself as a police officer, Officer Ahearn asked the plaintiff for identification, including her driver's license. Officer Ahearn asked the plaintiff if the address shown on the license was correct and the plaintiff responded that she could not or would not disclose her correct residential address. The address appearing on the driver's license appeared to be in Broward County

and the plaintiff was arrested in Dade County. Registration of the automobile which the plaintiff was driving showed that the car was registered in the name of an individual other than the plaintiff and the plaintiff explained that she was using the car with his permission. A check was made on the registration through the police radio and the officers found that the address on the registration did not exist. It was later found that there had been a typographical error in making out the registration and the car was released to the registered owner.

Approximately six weeks prior to May 24, 1973, Officer Ahearn had stopped a vehicle containing the plaintiff and a Mr. Rick Cravero. The plaintiff was also driving that vehicle when it was stopped and her license was checked by Officer Ahearn. Mr. Cravero had been under surveillance by the City of Miami Police Department for approximately five months in that he was suspected of dealing in narcotics. Neither the plaintiff nor Mr. Cravero were arrested by Officer Ahearn on that occasion. Inasmuch as the plaintiff was unable to give Officer Ahearn a specific address for her residence, she was arrested for speeding and was taken by Officers Ahearn and Mosher to the police station some seventy blocks distant. The time of this arrest was approximately 7:30 p. m. on May 24, 1973. The plaintiff was not taken to the traffic section of the police department but was taken to the narcotics section. Officers Ahearn and Mosher were not assigned to traffic detail but were assigned at the time of this arrest to the narcotics section and took the plaintiff to their office. Upon arriving at their office, the plaintiff was requested to open her purse and at that time a pistol was observed. The plaintiff did not display a permit for carrying this weapon and she was thereafter placed under arrest by Officer Ahearn for carrying a concealed weapon and was advised of her constitutional rights at this time. A more thorough search was then made of her purse and

certain tablets were discovered. These tablets were not placed in evidence although there was testimony from one witness that the tablets were subjected to chemical analysis and were found to be barbituates. Plaintiff claimed at the time that these barbituates had been purchased pursuant to a prescription she had received from a doctor. No additional evidence on that point was submitted by plaintiff. The search of plaintiff's purse also revealed an envelope containing some slips of paper and approximately $4,400.00 in cash and a gold coin and another small piece of jewelry. Plaintiff was wearing some diamond rings and these were also surrendered to the police by the plaintiff at the request of the police. The plaintiff was then taken to another section of the police station and was charged with possession of narcotic drugs unlawfully carrying a concealed weapon and speeding. She was released later that night on $2,000.00 bond which was posted by a friend.

On the morning of May 25, 1973, Officer Ahearn advised Mr. John Zahurak of the United States Internal Revenue Service that Mrs. Willits had been arrested and advised him of the charge of possession of narcotics placed against her. Mr. Zahurak on that day went over to the City of Miami Police Department and viewed the police report prepared on the arrest of the plaintiff and the description of the materials taken from her purse. Mr. Zahurak was also advised by representatives of the City of Miami Police Department that the plaintiff was an associate of several persons who were suspected of dealing in narcotics. Mr. Zahurak was advised by Officer Ahearn that the sum of $4,400.00 had been taken from Mrs. Willits' purse and that the sum was in a white envelope which contained a slip of paper with some names and figures on it. He further advised Mr. Zahurak that Mrs. Willits had told him that she was not employed. Mr. Zahurak testified that he then checked to seek whether Mrs. Willits had filed an income tax return

for the years 1969, 1970, 1971 and 1972, and the information he received was that no return had been filed by Mrs. Willits for those years. Although the police report indicated that only a few pills contained in two viles had been found in Mrs. Willits' purse, Mr. Zahurak computed that Mrs. Willits had earned commission income of $60,000.00 on sales of $240,000.00 worth of cocaine during 1973 and recommended to his superiors that Mrs. Willits' taxable period for the period from January 1, 1973, through May 23, 1973, be terminated and that a tax be demanded and if necessary assessed against Mrs. Willits for that period in the amount of $25,549.00. Also on May 25, 1973, Officer Zahurak caused an administrative summons to be issued to the City of Miami Police Department for the property which had been taken from Mrs. Willits' purse and person.

On May 25, 1973, at approximately 3:20 p. m., a notice was sent to Mrs. Willits by certified mail from the District Director of Internal Revenue Service in Jacksonville, Florida, advising her that her taxable period from January 1, 1973 through May 23, 1973, had been terminated and that there was a tax due and payable from her for that period of $25,549.00. Mrs. Willits was further advised in that letter that any unpaid portion of the tax would be assessed against her and that administrative or judicial action to collect the assessment would be taken immediately. On May 25, 1973, an assessment in the amount of $25,549.-00 for Federal income taxes for the terminated period was made against Mrs. Willits. On May 30, 1973, Revenue Officer Vincent Bernola served a notice of levy and a notice of seizure upon the City of Miami Police Department seeking the property of the plaintiff, Sharon Willits, in their possession.

The plaintiff, Sharon Willits, was divorced from her husband, Kenneth E. Willits, in June 1972. Pursuant to the terms of that divorce, Sharon Willits received $67.50 alimony per week and child support for her two children of $67.50 per week. The plaintiff received the alimony for five months and thereafter received a settlement of $400.00 and no further alimony. The child support has continued. Pursuant to the divorce, plaintiff also received the residence in which she had lived while married which was sold in the Spring of 1973 for $2,000.00 cash with the purchaser assuming the mortgage. Plaintiff had no other funds or substantial property at the time of her divorce. During 1973 and for an unspecified period in 1972 the plaintiff has been supported either by Mr. Rick Cravero or by winnings from gambling and all money and property which she has received during that period derived from one of these two sources —she testified that the jewelry and money in suit was provided by Cravero. No evidence was introduced which would tend to show that she will not continue to be supported by Mr. Cravero.

On May 29, 1973, the plaintiff filed suit in the United States District Court alleging that the seizure of plaintiff's property by the defendants was illegal in that no jeopardy assessment had been made against the plaintiff and no statutory notice of deficiency or other notice had been received by the plaintiff prior to the seizure of her property in this case. Plaintiff further alleged that plaintiff did not owe any taxes, that the assessment for taxes if made was based on illegally seized evidence and that plaintiff was seeking return of her property and injunctive relief from this Court because she had been left virtually penniless by the illegal confiscation of her property and had no adequate remedy at law. The United States filed a motion to dismiss plaintiff's action on the grounds that plaintiff's suit is barred by Section 7421 of the Internal Revenue Code and that the Court therefore is without jurisdiction in this case.

 Special testimony was taken in this case on the issue of whether the search of Sharon Willits' purse by Officer Ahearn was a lawful search incident to arrest and whether the assessment of the United States for Federal taxes

against the plaintiff was therefore, at least in part, based on illegally seized evidence. It is unquestioned that the exclusionary rule of the Fourth Amendment precludes the introduction of evidence in a criminal proceeding against an individual in either a state or a federal court where that evidence is obtained by the state or federal government in violation of a person's rights under the Fourth Amendment., Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081 (1961). The Supreme Court has not decided whether the exclusionary rule of the Fourth Amendment applies to purely civil tax proceeding, and this area of the law appears to be unsettled. This Court would decide the issue of the legality of the search and the effect on any assessment which may have been made by the United States if that was necessary for determination of this case. However, inasmuch as a resolution of this matter can be made without ruling as to whether the exclusionary rule of the Fourth Amendment applies to a purely civil tax proceeding, this Court will make no decision as to the legality or illegality of the search of Sharon Willits' purse by officers of the City of Miami Police Department.

■ Section 7421 of the Internal Revenue Code provides that with the exception of the provisions of Sections 6212(a) and (c), 6213(a), 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person. The plaintiff in this case alleged that she has received no notice that a jeopardy assessment had been made against her and has received no statutory notice of deficiency from the Internal Revenue Service with respect to the taxes claimed to be due from her. This Court finds that the plaintiff's taxable year from January 1, 1973 to May 23, 1973, was terminated by the District Director of Internal Revenue pursuant to Section 6851 of the Internal Revenue Code and that an assessment was made against the taxpayer under Section 6201 of the Internal Revenue Code. This Court specifically finds the procedures employed by the Internal Revenue Service in terminating the taxpayer's taxable year and then making an assessment under Section 6201 of the Internal Revenue Code were proper and that collection was lawfully undertaken to collect the assessed taxes from the plaintiff herein. Where a person's taxable year is terminated pursuant to Section 6851 of the Internal Revenue Code and an assessment is thereafter made for the terminated period pursuant to Section 6201, there is no requirement that the Internal Revenue Service forward to the taxpayer a statutory notice of deficiency with respect to the assessment made for the terminated period. Irving v. Gray, 479 F.2d 20 (C.A. 2, 1973).

■ In Enochs v. Williams Packing Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), the Supreme Court recognized the prohibition of Section 7421 of the Internal Revenue Code against enjoining the assessment and collection of a federal tax as an essential governmental safeguard. The court pointed out (370 U.S. pp. 6–7, 82 S.Ct. 1125) that to avoid the bar of Section 7421(a) a plaintiff must show: (1) That the exaction sought to be collected is merely in the guise of a tax and that under the most liberal view of the law and facts then existing the Government cannot establish its claim; and (2) That equity jurisdiction otherwise exists and the plaintiffs are without an adequate remedy at law. The failure of the plaintiff to satisfy either of these two requirements is fatal to the maintenance of a suit for injunctive relief. Bowers v. United States, 423 F.2d 1207 (C.A. 5, 1964).

The plaintiff has failed to show that the exactions sought to be collected is merely in a guise of a tax and that under the most liberal view of the law and facts then existing the government cannot establish its claim. At the time the taxpayer's year was terminated the Internal Revenue Service had been advised by the City of Miami Police Department that the plaintiff was associating with persons suspected of dealing in narcot-

ics. Small amounts of barbituates were found in her purse at the time of her arrest with large sums of money. The plaintiff had several diamond rings and other jewelry which she did not possess at the time of her divorce. She had admitted that she had been unemployed and the Internal Revenue Service had no record of tax returns filed by the plaintiff for the year subsequent to her divorce 1972.

The plaintiff has also failed to establish that equity jurisdiction existed in this case and that she is without an adequate remedy at law. Sharon Willits testified that she is being supported by Mr. Rick Cravero and no evidence was introduced showing that she would not be supported by Mr. Cravero in the future. Also, the United States has agreed that until a final resolution of plaintiff's tax liabilities can be made for the year 1973, the United States will not sell or otherwise dispose of the jewelry seized from Mrs. Willits in collecting the assessment made against her. There has been no showing therefore of irreparable injury or harm to the plaintiff. In addition, this court finds that the plaintiff has an adequate remedy at law in this case. Taxpayer, whose taxable period has been terminated pursuant to Section 6851 of the Internal Revenue Code may reopen his taxable period by filing a return for the full calendar year (Section 6851(b) of the Internal Revenue Code). Upon filing a return for the full tax year, the taxpayer, whose year has previously been terminated under Section 6851, is, in effect, in the same position as one who has made payments of estimated income taxes throughout the year, except that by necessity the Government, rather than the taxpayer, has estimated the amount of tax.

If the plaintiff reopens the taxable period by filing a 1973 income tax return, one of several possible situations will arise. First, if the full year return indicates on its face that the taxes owing for the entire year are less than the entire amount previously collected by the Government, then the return will be treated as an informal refund claim, which if not allowed or not acted upon within six months thereafter establishes jurisdiction for a refund suit in the United States District Court. Second, if the taxpayer were to file the return for the entire year showing less tax than that determined by the Internal Revenue Service, the Commissioner would, if he disagrees with the return, determine a deficiency based upon the full taxable year and issue to the taxpayer a statutory notice of deficiency. The taxpayer, would therefore, have an opportunity for a redetermination of the deficiency by the United States Tax Court.

It is clear, therefore, that a taxpayer such as the plaintiff, retains both her well established right to bring an action in the District Court for refund of federal taxes, or in the alternative, to petition the United States Tax Court for a redetermination of her liabilities once the Commissioner issues a statutory notice of deficiency. Each of these actions simply depends upon the filing by the plaintiff of her 1973 tax returns at the appropriate time, and provides her with an adequate remedy at law. The rulings herein made are without prejudice to the right of the plaintiff to raise the same issues in subsequent or other litigation.

This Memorandum Opinion shall serve as the findings of fact required by Rule 52, Federal Rules of Civil Procedure.

It is the opinion of this court that the motion for temporary mandatory injunction and prohibitory injunction filed by the plaintiff herein should be denied and that plaintiff's action should be dismissed for lack of jurisdiction.

It is so ordered.