**Sharon WILLITS, Plaintiff,**

**v.**

**Bernard GARMIRE, Chief of Police, City of Miami, et al., Defendants.**

**No. 73–920–Civ–CF.**

United States District Court, S. D. Florida.

Dec. 12, 1974.

George D. Gold, of Moran & Gold, Miami, Fla., for defendants.

Montague Rosenberg, Asst. City Atty., Miami, Fla., for defendants.

## MEMORANDUM OPINION

FULTON, Chief Judge.

Plaintiff has filed a "civil rights" complaint against the Chief of Police of the City of Miami and two City police officers alleging that she had been deprived of rights and privileges guaranteed to her under the Fourth Amendment, U.S.Const. She seeks relief under Title 42, Section 1983, United States Code. An extensive, pre-trial stipulation was prepared and submitted by the parties allowing the Court to consider the facts of this cause, and judge liability vel non, on the basis of the transcript of testimony taken and heard by this Court in Case No. 73–918–Civ–CF. See Willits v. Richardson, S.D.Fla.1973, 362 F.Supp. 456, rev'd Willits v. Richardson, 5 Cir., 1974, 497 F.2d 240. The stipulation also encom-

passed consideration of many additional exhibits, including ground and aerial photographs, a speedometer test certificate, Internal Revenue Service reports and pertinent portions of a transcript of trial held in the Metropolitan Court in and for Dade County, Florida. The plaintiff has agreed that the Chief of Police is not liable and a dismissal with prejudice shall be entered in his favor.

Plaintiff was the "girlfriend" of a man whom Miami Police suspected of being a drug smuggler. On May 24, 1973, at approximately 7:00 P.M., plaintiff was departing the residential section of the City of North Bay Village where she and her "boyfriend" intended to rent a home. While she was stopped for a "red light" at the exitway from the residential section (which is on the South side of the 79th Street Causeway), plaintiff observed to the West a small, red automobile proceeding in an easterly direction. Suddenly, however, it turned right, and swung around behind her. When the light turned "green," plaintiff turned left, toward Miami, and proceeded West on the Causeway, with the red car behind her.

As she drove by a local eatery situated across from, and slightly West of the exitway, she saw a friend to whom she motioned with her hand and arm to indicate that she was being followed. This person had been waiting at a restaurant for his son, who parked cars there. He also had noticed the red car turn right and swing around behind plaintiff's vehicle. He recalled plaintiff driving by and motioning to him. He looked back, observed the red car behind her and got a glimpse of the occupants. He described the man behind the wheel as having long shaggy hair and a shaggy beard, with a woman next to him. Both cars continued West toward the corporate limits of Miami.

The male driver of the red car was in fact defendant-Ahearn, an undercover police officer assigned to a special surveillance section of the City of Miami Police Department called the "Strategic Investigative Unit". The woman was defendant-Mosher, apparently a police woman. Ahearn had surveilled and followed plaintiff and her "boyfriend" several months before, stopping them at that time for an identification check and general questioning.

Plaintiff, who was then within the City of Miami, turned right at the intersection of N.E. 82nd Street and 10th Avenue, after which she pulled over to the side of the road to see if the red car, still close behind, would pass her; it did not. Instead, the defendants pulled over also and stopped, without leaving their vehicle.

Plaintiff drove back onto the roadway and continued North. The defendants also drove back onto the roadway; but, at this time pulled their vehicle abreast of hers and motioned her to stop. The defendants flashed what appeared to be badges at the plaintiff. She stopped her car and exited. The defendants, dressed in jeans and hippy-like clothes, announced that they were police officers and that she was about to be placed under arrest for "speeding." The defendant Ahearn wore long hair in a pony tail. They told her to get her possessions from her car. At the time neither defendant had a book of traffic tickets nor any of the normal paraphernalia for traffic control. The speedometer of the vehicle had not been calibrated as would be expected of a vehicle used to make a speeding arrest.

The defendants searched the automobile driven by plaintiff but did not then search her person. Plaintiff was taken into custody; but instead of being taken to jail for booking on a traffic charge, she was taken to the narcotics section of the Miami Police Department. There, the defendants proceeded to interrogate her, searched her, took custody of her cash and jewelry. Some hours later, after midnight, she was "booked."

During the search, the defendants found plaintiff in possession of 4 tablets of a prescription drug (Desbutal) and a firearm which she had removed from the glove compartment of her car and placed in her handbag.

The defendant, Ahearn, falsely reported to a representative of the Internal Revenue Service that she had been found in possession of narcotics. The plaintiff was charged in State Court proceedings with possession of the firearm and the prescription drug, but then items were suppressed by order of the State Court. As a result of the false information furnished to it by the defendant-Ahearn, I. R. S. caused a "termination assessment" to be made against the plaintiff. (Title 26 U.S.C. § 6581).

It is clear from all the evidence and facts summarized above, and set out below, that the plaintiff was the victim of an unlawful, pretexual arrest.

The pretexual nature of the arrest has been demonstrated to this Court, *inter alia,* by the following circumstances:

(a) a previous investigatory stop of the plaintiff by defendant-Ahearn;

(b) the total unsuitability of these arresting officers for traffic work —no calibration; unmarked car; no siren; no colored light; no traffic ticket book between either defendant; no arrest forms;

(c) totally false and misleading statements made by Ahearn to I. R. S. Agent Zahurak;

(d) prior 5-month surveillance of the "boyfriend" of the plaintiff;

(e) conflicting and, at times, incredible testimony of defendant-Ahearn:

(1) First he said plaintiff was searched at the station around 10:30 P.M., more than 3 hours after her arrest. Then, he said he was mistaken, that it must have been 8:00 P.M., in an effort to explain her detention for over five hours on a "traffic arrest."

(2) He said he took her jewelry because he had "probable cause" to believe it was stolen, because she was not carrying sales receipts for it.

(3) He said he had not searched for, or seized, personal papers, such as plaintiff's bank statement and checkbook. However, I. R. S. Agent Zahurak testified that Ahearn had seized, and delivered, such papers to him.

The Court is unable to accept, or credit, much of Ahearn's testimony, both because of repeated discrepancies in his testimony and because of his lack of candor as a witness.

It is obvious that the defendants did not have good faith reason to believe that the plaintiff was guilty of any traffic violation. During the trial of the traffic offense (pertinent portions of which record have been stipulated to by the parties), the defendant-Mosher, in an attempt to justify the arrest, offered the County Judge a certificate supposedly showing the calibration of the car she and Ahearn had used in the arrest. However, as the County Judge observed, the calibration report related to a completely *different* automobile.

Title 42, U.S.C. § 1983, provides a private right of action for persons who are deprived of " . . . any rights, privileges, or immunities secured [to them] by the Constitution and laws" by persons acting under color of law. Included therein are the rights to be free from unlawful arrest, detention, search, seizure and harassment. An arrest and search without probable cause is a classic, prima facie case in violation of this Section. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961); Dowsey v. Wilkins, 5 Cir. 1972, 467 F.2d 1022; Anderson v. Nosser, 5 Cir. 1971, 438 F.2d 183; Hampton v. City of Chicago, 7 Cir. 1973, 484 F.2d 602. These rights are guaranteed to all persons, worthy and unworthy, those who have respectable friends and those who do not. Worthington v. United States, 6 Cir. 1948, 166 F.2d 557, 568. "The Fourth Amendment does not exclude from its protection a woman of the underworld. Police officers can no more violate her rights under the

Constitution than they can violate those of any other person."

The Court specifically finds that the defense of "probable cause," argued on defendants' behalf, was not sustained by the evidence. Nor is there any other legal justification for the conduct in which these defendants engaged while acting under color of law.

Thereupon, the Court shall enter judgment in favor of the plaintiff and against the defendants, Mosher and Ahearn, in the stipulated amount of $1,000.00.

This Memorandum Opinion shall stand as the findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.