## LAING v. UNITED STATES et al.

No. 73–1808.   Argued January 21, 1975—Reargued October 15,
1975—Decided January 13, 1976*

---

*Together with No. 74–75, *United States et al.* v. *Hall,* on certio-
rari to the United States Court of Appeals for the Sixth Circuit.

MARSHALL, J., delivered the opinion of the Court, in which BRENNAN, STEWART, WHITE, and POWELL, JJ., joined. BRENNAN, J., filed a concurring opinion, *post,* p. 185. BLACKMUN, J., filed a dissenting opinion, in which BURGER, C. J., and REHNQUIST, J., joined, *post,* p. 188. STEVENS, J., took no part in the consideration or decision of the cases.

*Joseph S. Oteri* reargued the cause for petitioner in No. 73–1808. With him on the brief were *Rudolph F. Pierce* and *Charlotte A. Perretta.* *Stuart A. Smith* reargued the

cause for the United States et al. in both cases. With him on the brief were *Solicitor General Bork* and *Assistant Attorney General Crampton. Donald M. Heavrin* reargued the cause and filed a brief for respondent in No. 74–75.

MR. JUSTICE MARSHALL delivered the opinion of the Court.

These companion cases involve two taxpayers whose taxable years were terminated by the Internal Revenue Service (IRS) prior to their normal expiration date pursuant to the jeopardy-termination provisions of § 6851 (a)(1) of the Internal Revenue Code of 1954 (Code), 26 U. S. C. § 6851 (a)(1).[1] Section 6851 (a)(1) allows the IRS immediately to terminate a taxpayer's taxable period when it finds that the taxpayer intends to do any act tending to prejudice or render ineffectual the collection of his income tax for the current or preceding tax-

---

[1] Section 6851 (a)(1) provides:

"If the Secretary or his delegate finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the income tax for the current or the preceding taxable year unless such proceedings be brought without delay, the Secretary or his delegate shall declare the taxable period for such taxpayer immediately terminated, and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of such tax as is unpaid, whether or not the time otherwise allowed by law for filing return and paying the tax has expired; and such taxes shall thereupon become immediately due and payable. In any proceeding in court brought to enforce payment of taxes made due and payable by virtue of the provisions of this section, the finding of the Secretary or his delegate, made as herein provided, whether made after notice to the taxpayer or not, shall be for all purposes presumptive evidence of jeopardy."

able year. Upon termination the tax is immediately owing and, after notice, the IRS may, and usually does, levy upon the taxpayer's property under § 6331 (a) of the Code, 26 U. S. C. § 6331 (a), to assure payment.

We must decide whether the IRS, when assessing and collecting the unreported tax due after the termination of a taxpayer's taxable period, must follow the procedures mandated by § 6861 *et seq.* of the Code, 26 U. S. C. § 6861 *et seq.*, for the assessment and collection of a deficiency whose collection is in jeopardy.[2] The answer, as we shall see, depends on whether the unreported tax due upon such a termination is a "deficiency" as defined in § 6211 (a) of the Code, 26 U. S. C. § 6211 (a) (1970 ed. and Supp. IV). The Government argues that the tax liability that arises after a § 6851 termination cannot be a "deficiency," and that the procedures for the assessment and collection of deficiencies in jeopardy are therefore inapplicable. We reject this argument. We agree with the taxpayers that any tax owing, but unreported, after a § 6851 termination is a deficiency, and that the assessment of that deficiency is subject to the provisions of § 6861 *et seq.* We reverse in No. 73–1808 and affirm in No. 74–75.

I

A. No. 73–1808, *Laing* v. *United States.* Petitioner James Burnett McKay Laing is a citizen of New Zea-

---

[2] Section 6861 (a) provides for the immediate assessment of deficiencies whose assessment or collection would otherwise be in jeopardy:

"If the Secretary or his delegate believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213 (a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary or his delegate for the payment thereof."

land. He entered the United States from Canada on a temporary visitor's visa on May 31, 1972. On the following June 24, Mr. Laing and two companions sought to enter Canada from Vermont but were refused entry by Canadian officials. As they turned back, they were detained by United States customs authorities at Derby, Vt. Upon a search of the vehicle in which the three were traveling, the customs officers discovered in the engine compartment a suitcase containing more than $300,000 in United States currency. The IRS District Director found that petitioner Laing and his companions were in the process of placing assets beyond the reach of the Government by removing them from the United States, thereby tending to prejudice or render ineffectual the collection of their income tax.[3] He declared the taxable periods of petitioner and his companions immediately terminated under § 6851 (a). An assessment of $310,000 against each was orally asserted for the period from January 1 through June 24, 1972. The assessment against Mr. Laing was subsequently abated to the amount of $195,985.55 when a formal letter-notice of termination and demand for payment and the filing of a return were sent. Mr. Laing received no deficiency notice under § 6861 (b) and no specific information about how the amount of the tax was determined.[4]

After Mr. Laing and his companions refused to pay the tax, the IRS seized the currency that had been found

---

[3] The Code provides that a § 6851 termination will be ordered by "the Secretary or his delegate," § 6851 (a). The Regulations provide that the District Director is in all cases authorized to make the required findings and order the termination. Treas. Reg. § 1.6851–1 (a)(1), 26 CFR § 1.6851–1 (a)(1) (1975).

[4] A deficiency notice is of import primarily because it is a jurisdictional prerequisite to a taxpayer's suit in the Tax Court for redetermination of his tax liability. See *infra*, at 171.

in the vehicle. A portion thereof was applied to the tax assessed against Mr. Laing.[5]

On July 15, petitioner filed suit against the United States, the Commissioner of Internal Revenue, the District Director, and the Chief of the Collection Division, District of Vermont, in the United States District Court for the District of Vermont. He asserted the absence of a notice of deficiency, which he claimed was required under § 6861 (b), and he challenged as violative of due process both the provisions of the levy and distraint statute, § 6331 (a), and the actions of the IRS in seizing and retaining the currency "without any finding of a substantial or probable nexus between that money and taxable income." App. in No. 73–1808, p. 20.[6]

The District Court, relying on its controlling court's decision in *Irving* v. *Gray*, 479 F. 2d 20 (CA2 1973), held that a notice of deficiency is not required when a taxable period is terminated pursuant to § 6851 (a)(1), and dismissed the suit as prohibited by the Federal Anti-Injunction Act, § 7421 (a) of the Code, 26 U. S. C. § 7421 (a), and as within the plain wording of the exception to the Declaratory Judgment Act, 28 U. S. C. § 2201, for a controversy with respect to federal taxes. 364 F. Supp. 469 (1973).

Adhering to its earlier ruling in *Irving*, the Second Circuit affirmed *per curiam*. 496 F. 2d 853 (1974). It expressly declined to follow the Sixth Circuit's decision in *Rambo* v. *United States*, 492 F. 2d 1060 (1974).[7] These rulings of the Second Circuit, and one of the

---

[5] Petitioner Laing has not denied ownership of the currency. Tr. of Oral Arg. 64; Tr. of Oral Rearg. 48.

[6] Petitioner Laing also has filed suit for refund in the United States District Court for the District of Vermont. Trial is being delayed, pursuant to stipulation of the parties, pending our decision in the present case.

[7] *Rambo* is before us as No. 73–2005, cert. pending.

Seventh Circuit, *Williamson* v. *United States*, 31 A. F. T. R. 2d 73–800 (1971), appeared to be in conflict with holdings by other Courts of Appeals, *Rambo* v. *United States, supra; Hall* v. *United States*, 493 F. 2d 1211 (CA6 1974); and *Clark* v. *Campbell*, 501 F. 2d 108 (CA5 1974).[8] Suggesting that the conflict was irreconcilable and noting that some 70 pending cases in the federal courts depended on its resolution, the Solicitor General did not oppose Mr. Laing's petition for certiorari. We granted certiorari to resolve the conflict.[9] 419 U. S. 824 (1974).

B. No. 74–75, *United States* v. *Hall.* Respondent Elizabeth Jane Hall is a resident of Shelbyville, Ky. After the arrest of her husband in Texas on drug-related charges, Kentucky state troopers obtained a warrant and searched respondent's home on January 31, 1973. They found controlled substances there. The next day the Acting District Director notified respondent Hall by letter that he found her "involved in illicit drug activities, thereby tending to prejudice or render ineffectual collection of income tax for the period 1–1–73 thru 1–30–73." App. in No. 74–75, p. 11. Citing § 6851, the Acting Director declared respondent's taxable period for the first 30 days of 1973 "immediately terminated" and her income tax for that period "immediately due and payable." *Ibid.* He further informed respondent that a tax in the amount of $52,680.25 for the period "will be immediately assessed" and that "[d]emand for immediate payment of the full amount of this tax is hereby made." *Ibid.* A return for the terminated period, pursuant to § 443 (a)(3) of the Code, 26 U. S. C. § 443

---

[8] Cert. pending *sub nom. United States* v. *Clark*, No. 74–722.

[9] The developing conflict among the federal courts was recognized in *Willits* v. *Richardson*, 497 F. 2d 240, 246 n. 4 (CA5 1974), and *Jones* v. *Commissioner*, 62 T. C. 1, 2–3 (1974).

(a) (3), was requested but not filed. The formal assessment was made on February 1. As was the case with Mr. Laing, Mrs. Hall received no deficiency notice under § 6861 (b) and no specific information about how the amount of the tax had been determined.

Respondent was unable to pay the tax so assessed. Therefore, the IRS, acting pursuant to § 6331, levied upon and seized respondent's 1970 Volkswagen and offered it for sale.[10]

Respondent Hall instituted suit on February 13 in the United States District Court for the Western District of Kentucky, seeking injunctive relief and compensatory and punitive damages. The court issued an order temporarily restraining the IRS from selling the automobile and from seizing any more of respondent's property. Thereafter, relying upon *Schreck* v. *United States*, 301 F. Supp. 1265 (Md. 1969), the court held that the Federal Anti-Injunction Act, § 7421 (a), was inapplicable because of the IRS's failure to follow the procedures of § 6861 *et seq.* The court ordered the return of respondent's automobile upon her posting a bond in the amount of its fair market value.[11] It issued a preliminary injunction restraining the defendants (the United States, the Acting District Director, the Group Supervisor of Internal Revenue, and a lieutenant of the Kentucky State Police) "from harassing or intimidating [respondent] in any manner including but not limited to trespassing on, seizing or levying upon any of her property of whatever nature, be it rental property or not." Pet. for Cert. in No. 74–75, p. 5a.

---

[10] Counsel for respondent Hall asserted that the IRS also "seized $57 from her bank account," and that it would, or did, seize her paycheck. Tr. of Oral Arg. 46. Counsel also stated that $77 was later refunded to Mrs. Hall. *Id.,* at 57. We are not advised how the latter amount was computed.

[11] A corporate surety bond in the amount of $1,650 was duly filed.

On appeal, the United States Court of Appeals for the Sixth Circuit affirmed *per curiam*, 493 F. 2d 1211 (1974), relying upon its opinion and decision in *Rambo* v. *United States, supra*, decided one month earlier. In *Rambo* the court had held that the failure of the IRS to issue a deficiency notice for a terminated taxable period, and the consequent unavailability of a remedy in the United States Tax Court, entitled the taxpayer to injunctive relief. Because of the conflict, indicated above, we also granted certiorari in Mrs. Hall's case. 419 U. S. 824 (1974).

## II

In these cases, the taxpayers seek the protection of certain procedural safeguards that the Government claims were not intended to apply to jeopardy terminations. Specifically, the taxpayers argue that the procedures mandated by § 6861 *et seq.* for assessing and collecting deficiencies whose collection is in jeopardy also govern assessments of taxes owing, but not reported, after the termination of a taxpayer's taxable period under § 6851. Resolution of this claim requires analysis of the interplay between these two basic jeopardy provisions—§ 6851, the jeopardy-termination provision, and § 6861, the jeopardy-assessment provision.

The initial workings of the jeopardy-termination provision, which essentially permits the shortening of a taxable year, are not in dispute. When the District Director determines that the conditions of § 6851 (a) are met—generally, that the taxpayer is preparing to do something that will endanger the collection of his taxes [12]—the District Director may declare the taxpayer's

---

[12] The precise findings required are: (1) that the taxpayer designs quickly to depart from the United States or to remove his property therefrom; or (2) that he intends to conceal himself or his property therein; or (3) that he is about to do any other act tending to

current tax year terminated. The tax for the shortened period and any unpaid tax for the preceding year become due and payable immediately, § 6851 (a), and the taxpayer must file a return for the shortened year. § 443 (a)(3).

The disagreement between the taxpayers and the Government focuses on the applicability of the jeopardy-assessment procedures of § 6861 *et seq.* to the assessment [13] and collection of taxes that become due upon a § 6851 termination. Section 6861 (a) provides for the immediate assessment of a deficiency, as defined in § 6211 (a), whenever the assessment or collection of the deficiency would be "jeopardized by delay." By allowing an immediate assessment, § 6861 (a) provides an exception to the general rule barring an assessment until the taxpayer has been sent a notice of deficiency and has been afforded an opportunity to seek resolution of his tax liability in the Tax Court.[14] Certain procedural safeguards are provided, however, to the taxpayer whose deficiency is as-

---

prejudice or render wholly or partly ineffectual proceedings to collect income tax for the current or preceding year. § 6851 (a). See n. 1, *supra.*

[13] The "assessment," essentially a bookkeeping notation, is made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls. 26 U. S. C. § 6203. In both of the cases at bar, the assessments were made immediately upon termination of the taxpayers' taxable years.

In the past, the Government has argued that § 6851 contained its own assessment authority, see *Schreck* v. *United States,* 301 F. Supp. 1265 (Md. 1969), but it has since abandoned that position, see *Lisner* v. *McCanless,* 356 F. Supp. 398, 401 (Ariz. 1973), and it does not press the point here. Cf. n. 17, *infra.*

[14] A tax deficiency whose collection is not in jeopardy is collected according to the procedures of §§ 6211–6216 of the Code, 26 U. S. C. §§ 6211–6216 (1970 ed. and Supp. IV). Under § 6213 (a), the taxpayer ordinarily has 90 days after mailing of his deficiency notice in which to file his claim with the Tax Court.

sessed immediately under § 6861 (a). Within 60 days after the jeopardy assessment, the District Director must send the taxpayer a notice of deficiency, § 6861 (b), which enables the taxpayer to file a petition with the Tax Court for a redetermination of the deficiency, 26 U. S. C. § 6213 (a) (1970 ed., Supp. IV). The taxpayer can stay the collection of the amount assessed by posting an equivalent bond, § 6863 (a). Any property seized for the collection of the tax cannot be sold until a notice of deficiency is issued and the taxpayer is afforded an opportunity to file a petition in the Tax Court. If the taxpayer does seek a redetermination of the deficiency in the Tax Court, the prohibition against sale extends until the Tax Court decision becomes final. § 6863 (b)(3) (A).[15]

The taxpayers view the provisions of § 6861 *et seq.* as complementary to those of § 6851. They contend that to the extent the tax owing upon a jeopardy termination has not been reported, it is a "deficiency" as that term is defined in § 6211 (a) and used in § 6861 (a), and that the deficiency, being of necessity one whose assessment or collection is in jeopardy,[16] must be assessed and collected in accordance with the procedures of § 6861 *et seq.*

Under the Government's view, on the other hand, §§ 6851 and 6861 are aimed at distinct problems and have no bearing on each other. "Section 6851," according to the Government, "advances the date when

---

[15] The rule against sale of the taxpayer's property has three limited exceptions: the property can be sold (1) if the taxpayer consents to the sale; (2) if the expenses of maintenance of the property will greatly reduce the net proceeds of its sale; or (3) if the property is perishable. §§ 6863 (b)(3)(B), 6336.

[16] This follows because the findings necessary to terminate a taxable year under § 6851 will always justify a finding that the assessment of the taxes owed will be "jeopardized by delay." See nn. 1 and 2, *supra.*

taxes are due and payable, while Section 6861 advances the time for collection of taxes which are already over-due [*i. e.,* already owing for a prior, normally expiring taxable year]." Brief for United States 10. The validity of this distinction rests on the Government's claim that a deficiency can arise only with respect to a nonterminated taxable year, so that no deficiency can be created by a § 6851 termination. If there is no deficiency to assess, of course, the provisions of § 6861 *et seq.* cannot apply.

Thus, under the Government's reading of the Code, the procedures for assessment and collection of a tax owing, but not reported, after the termination of a taxable period are not governed by § 6861 *et seq.*[17] The Government argues that, with the single exception of the bond provision of § 6851 (e), the taxpayer's only remedy upon a jeopardy termination is to pay the tax, file for a refund, and, if the refund is refused, bring suit in the district

---

[17] Since it does not view the termination as creating a deficiency, the Government would apply neither the ordinary nor the jeopardy deficiency assessment procedures. Under the Government's approach, the taxes due upon a jeopardy termination are simply assessed under the general assessment section of the Code, § 6201, 26 U. S. C. § 6201 (1970 ed. and Supp. IV).

The Government further argues that the *power* to assess jeopardy terminations is derived solely from the general assessment section. While the taxpayers argue that the power to assess jeopardy terminations comes from the jeopardy-assessment provision, § 6861, rather than the general assessment provision, § 6201, we need not resolve that question here. Even if the Government is correct that the assessment power comes from § 6201, the procedural rules of § 6861 *et seq.* govern, on their face, when the assessment is of a deficiency whose collection is in jeopardy. See n. 2, *supra.* Likewise, the procedural rules of §§ 6211–6216 govern assessments empowered by § 6201 when the assessment is of a deficiency whose collection is not in jeopardy. See n. 14, *supra,* and accompanying text. Cf. n. 13, *supra.*

court or the Court of Claims. See 28 U. S. C. § 1346 (a)(1). Since the IRS has up to six months to act on a request for a refund, the taxpayer, under the Government's theory, may have to wait up to half a year before gaining access to any judicial forum. See 26 U. S. C. §§ 6532 (a), 7422 (a) (1970 ed. and Supp. IV).

The Government does not seriously challenge the taxpayers' conclusion that if the termination of their taxable periods created a deficiency whose assessment or collection was in jeopardy, the assessments and collections in these cases should have been pursuant to the procedures of § 6861 *et seq.* The question, then, is whether the tax owing, but not reported, upon a jeopardy termination is a deficiency within the meaning of § 6211 (a).

## III

In essence, a deficiency as defined in the Code is the amount of tax imposed less any amount that may have been reported by the taxpayer on his return.[18]   § 6211

---

[18] A deficiency is defined as follows:

"(a) In general.

"For purposes of this title in the case of income, estate and gift taxes and excise taxes, imposed by subtitles A and B, chapters 42 and 43, the term 'deficiency' means the amount by which the tax imposed by subtitle A or B or chapter 42 or 43, exceeds the excess of—

"(1) the sum of

"(A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus

"(B) the amounts previously assessed (or collected without assessment) as a deficiency, over—

"(2) the amount of rebates, as defined in subsection (b)(2), made." 26 U. S. C. § 6211 (a) (1970 ed. and Supp. IV).

See also Treas. Reg. § 301.6211–1 (a), 26 CFR § 301.6211–1 (a) (1975). Thus a deficiency does not include all taxes owed by a

(a). Where there has been no tax return filed, the deficiency is the amount of tax due. Treas. Reg. § 301.6211–1 (a), 26 CFR § 301.6211–1 (a) (1975). As we have seen, upon terminating a taxpayer's taxable year under § 6851, the District Director makes a demand for the payment of the unpaid tax for the terminated period and for the preceding taxable year. The taxpayer is then required to file a return for the truncated taxable year. § 443 (a)(3). The amount due, of course, must be determined according to ordinary tax principles, as applied to the abbreviated reporting period. The amount properly assessed upon a § 6851 termination is thus the amount of tax imposed under the Code for the preceding year and the terminated short year, less any amount that may already have been paid. To the extent this sum has not been reported by the taxpayer on a return, it fits precisely the statutory definition of a deficiency.[19]

The Government resists this conclusion by reading the definition of "deficiency" restrictively to include only those taxes due at the end of a full taxable year when a return has been or should have been made. It argues that a "deficiency" cannot be determined before the close of a taxable year. Of course, we agree with the Govern-

taxpayer, but only those that are both owed and not reported. Cf. n. 19, *infra*.

[19] To the extent the tax owing upon a jeopardy termination has been reported by the taxpayer—either because it was reported for the preceding year, or because the taxpayer immediately filed a § 443 return—no deficiency is created, even if the taxes reported have not yet been paid. See n. 18, *supra*. Of course, the procedures for assessing deficiencies whose collection is in jeopardy, § 6861 *et seq.*, would not apply to such monies. The taxpayer has conceded owing the taxes he has reported, and those taxes, if unpaid, may be directly obtained by levy without according any prepayment access to the Tax Court. The levy provision, § 6331, contains provisions for the expedited collection of taxes owing in jeopardy situations.

ment that a deficiency does not arise until the tax is actually due and the taxable year is complete. The fact is, however, that under § 6851 the tax is due immediately upon termination. Moreover, upon a § 6851 termination, the taxpayer's taxable year has come to a close. See *Sanzogno* v. *Commissioner*, 60 T. C. 321, 325 (1973).[20] Section 441 (b)(3) defines as a "taxable year" the terminated taxable period on which a return is due under § 443 (a)(3). See also § 7701 (a)(23). Under the statutory definition of § 6211 (a), the tax owing and unreported after a jeopardy termination, which in these cases and in most § 6851 terminations is the full tax due, is clearly a deficiency. We see nothing in the definition to suggest that a deficiency can arise only at the conclusion of a 12-month taxable year; it is sufficient that the taxable period in question has come to an end and the tax in question is due and unreported.[21]

---

[20] The broad dictum to the contrary in the Board of Tax Appeals' 1938 opinion in *Ludwig Littauer & Co.* v. *Commissioner*, 37 B. T. A. 840, 842, upon which the Government in part relies, was apparently rejected by the Tax Court in the *Sanzogno* opinion. The majority recognized in *Sanzogno* that "[i]t is possible that our holding is in some conflict with the rationale of our opinion in *Ludwig Littauer & Co.*," 60 T. C., at 325 n. 2, and Judge Simpson wrote separately to suggest that the earlier precedent should have been given its formal burial then and there. In a subsequent § 6851 case, *Jones* v. *Commissioner*, 62 T. C. 1 (1974), the Tax Court avoided the broad rationale of *Littauer* and instead held simply that a termination letter was not a deficiency notice and that without a deficiency notice a taxpayer cannot litigate his claim in the Tax Court.

[21] See 9 J. Mertens, Law of Federal Income Taxation § 49.130 (J. Malone rev. 1971); Odell, Assessments: What are they—Ordinary? Immediate? Jeopardy?, 2 N. Y. U. 31st Inst. on Fed. Tax. 1495, 1520, 1522 (1973).

The Government argues that a deficiency cannot be created by a jeopardy termination because a notice of deficiency for a terminated year would make no sense. This is so, it is argued, because

Besides conflicting with the plain language of the Code provisions directly before us, the Government's position in these cases would, for no discernible purpose, isolate the taxpayer subjected to a jeopardy termination from most other income-tax payers. If the unreported tax due after a jeopardy termination is not a deficiency, the IRS need not issue the taxpayer a deficiency notice and accord him access to the Tax Court for a redetermination of his tax. Denial of an opportunity to litigate in the Tax Court is out of keeping with the thrust of the Code, which generally allows income-tax payers access to that court. Where exceptions are intended, the Code is explicit on the matter. See, e. g., § 6871 (b). Denying a Tax Court forum to a particular class of taxpayers is sufficiently anomalous that an intention to do so should not be imputed to Congress when the statute does not expressly so provide. This is particularly so in view of the Government's concession that the jeopardy-assessment procedures of § 6861 et seq. are sufficient to protect its interests, and that providing taxpayers with the

---

the year is not really over and may be reopened pursuant to § 6851 (b). Brief for United States 24–25. The Government ignores the effect of a § 6851 termination: for the taxpayer the "taxable year" is complete and taxes are immediately owing for that short year. §§ 441 (b) (3), 443 (a) (3), 6851. The deficiency for that period can easily be computed under § 6211 and notice of that deficiency issued. If the short year is thereafter reopened and again terminated, a new notice of deficiency can, and under our view of § 6861 et seq. must, be issued. § 6861 (b).

The Government's argument, Brief for United States 25–26, that Tax Court jurisdiction in the case of a terminated year that is subject to reopening is inappropriate must likewise fail. We see no reason why the Tax Court, applying normal tax principles, should be less capable of determining the tax owing for the short year than the district court or Court of Claims, which, under the Government's theory, would make that determination. See also § 6861 (c).

limited protections of those procedures would not impair the collection of the revenues.[22]

## IV

While the plain language of the provisions at issue here and their place in the legislative scheme suggest that the unreported tax due upon a § 6851 termination is a deficiency and that the deficiency, its collection being in jeopardy, must be assessed and collected according to the procedures of § 6861 *et seq.*, the Government attempts to undercut this conclusion by pointing to the legislative history of the several provisions at issue in this case. We are unpersuaded. The jeopardy-assessment and jeopardy-termination provisions have long been treated in a closely parallel fashion, and nothing that the Government points to in the early codifications suggests the contrary.

As the Government points out, the Revenue Act of 1918 (1918 Act) contained a termination provision, § 250 (g), 40 Stat. 1084, that was very similar to the present § 6851. Under the 1918 statute all assessments were made under the authority of Rev. Stat. § 3182,[23] and the taxpayer could attack an assessment only by paying the amount claimed and bringing suit for a refund in district court. Since there was no way for the taxpayer to contest assessments prior to payment, the Government had no need for any expedited jeopardy-assessment procedure

---

[22] The Government repeatedly conceded at oral argument that adoption of the taxpayers' theory would result in no significant injury to the Government other than the loss of some of the cases now pending in the lower courts. Tr. of Oral Arg. 9–10, 18, 21, 23, 24, 28, 30. This concession completely rebuts the dissent's claim that our decision today deprives the IRS "of a device it obviously needs in combatting questionable tax practices . . . ." *Post*, at 189.

[23] That statute was almost identical to § 6201 of the present Code.

such as is now authorized in § 6861.[24]   When a termination was made under § 250 (g), the tax assessment and collection thus proceeded exactly as in any other case—the taxpayer had to pay first and litigate later.

In the Revenue Act of 1921 (1921 Act), 42 Stat. 227, Congress added both a special procedure for prepayment challenges to assessments and an exception to that procedure.   The special procedure made available, under certain circumstances, a limited administrative remedy within the Bureau of Internal Revenue (predecessor to the IRS) by which taxpayers could question assessments before paying the taxes assessed.   § 250 (d) of the 1921 Act, 42 Stat. 266.   The Commissioner could, however,

---

[24] The jeopardy-assessment procedure, as is indicated, *supra,* at 170, is an exception to the normal deficiency-assessment mechanism, which allows a taxpayer the prepayment remedy of withholding the taxes claimed by the Government until after a final judicial determination of liability.   Of course, under the 1918 Act a taxpayer who sought to place in jeopardy collection of his taxes could be forestalled under the jeopardy-termination provision of § 250 (g), which enabled the IRS to declare immediately owing the tax for the present or previous taxable year.   That the jeopardy-assessment procedures, born of necessity to reconcile the prepayment remedy with the occasional need for expedited collections of taxes, did not exist to govern assessments after jeopardy terminations under the 1918 Act does not mean, of course, that the procedures, once formulated, were not intended to cover assessments of deficiencies created by jeopardy terminations as well as all other jeopardy assessments.

The Government suggests that the *power* to assess jeopardy terminations cannot derive from the jeopardy-assessment section because the jeopardy-termination provision existed in the 1918 Act before any provision was made for jeopardy assessments.   Brief for United States 40–42.   Since in our view the source of the power to assess jeopardy terminations is irrelevant in determining whether the procedures for jeopardy assessments apply to assessments after jeopardy terminations, see n. 17, *supra,* this argument is of no consequence.

pretermit that procedure if he believed that collection of the revenues might be jeopardized by delay. This exception, contained in a proviso to § 250 (d), was the precursor of § 6861. Since the proviso limited the availability of the administrative remedy to cases where collection of the taxes due would not be "jeopardized by such delay," the remedy was necessarily inapplicable to cases in which a § 250 (g) termination was made. As of 1921, then, the nascent prepayment remedy was available to ordinary taxpayers but not to taxpayers in either jeopardy situation—where the tax year had been terminated pursuant to § 250 (g), or where the full tax year had run and the Commissioner had determined that the collection of the tax would be jeopardized under the proviso to § 250 (d).

The Government, however, relies heavily on the 1921 Act, claiming that "[t]he key to an understanding of the term 'deficiency' lies" therein. Brief for United States 42. It relies on a reference to the term "deficiency" in § 250 (b), which set out the procedure for handling underpayments after returns had been filed:

> "If the amount already paid is less than that which should have been paid, the difference, to the extent not covered by any credits due to the taxpayer under section 252 (hereinafter called 'deficiency') . . . shall be paid upon notice and demand by the collector." 40 Stat. 265.

This "hereinafter" reference was permanently eliminated when the Act was revised in the Revenue Act of 1924 (1924 Act) and the word "deficiency" precisely defined—in much the same way as it is today. Nonetheless, the Government persists in viewing the reference in the 1921 Act as an authoritative definition of "deficiency." Since the reference related only to money owed after a return had been filed and examined, the Govern-

ment argues that Congress in 1921 did not consider the amount assessed pursuant to a jeopardy termination— which often must be assessed before a return is filed—to be a "deficiency." This supposed limitation in the 1921 Act continues, in the Government's view, to this day. We disagree with the Government's analysis.

To understand the use of the word "deficiency" in the 1921 Act, it is necessary to begin with the 1918 Act, where the term first appeared. In the 1918 statute the term was not formally defined but appeared in various provisions dealing with underpayments and overpayments of tax, referring to the difference between the amount due and the amount already paid. "Deficiency" was used synonymously with the word "understatement," and it is clear from the context that neither word was being used as a term of art. In the 1921 Act, the 1918 language was left largely unchanged, except that after the reference to the difference between the amount paid and the amount due, Congress added the parenthetical expression "(hereinafter called 'deficiency')," and from that point on replaced all references to "understatement" with the word "deficiency." From the context, it is evident that the "hereinafter" parenthetical term was not intended as a restrictive definition of deficiency, but merely as an indication that throughout the subsection the word would be used as shorthand for the difference between the amount paid and the amount that should have been paid.[25] We thus find nothing in the informal use of the term "deficiency" in the 1921 Act to limit our construc-

[25] Examination of the entire text of § 250, including the termination provision, § 250 (g), strongly suggests that in the 1921 Act the word "deficiency" was used in its colloquial sense to mean the amount of tax remaining unpaid at the time the tax was due, and that no significance was attached to whether a return had been filed at that time.

tion of the precise definition in § 6211 (a) of the present Code.

In 1924 Congress made a number of important changes in the jeopardy-assessment scheme. The termination section, § 282, 43 Stat. 302, remained basically the same as it had been in § 250 (g) of the 1921 Act, but taxpayers' prepayment remedies in the jeopardy-assessment provision were substantially altered. Section 274 (a) of the 1924 Act, 43 Stat. 297, provided that if, "in the case of any taxpayer, the Commissioner determine[d] that there is a deficiency" in the tax imposed by the Act, the Commissioner was required to mail a notice of deficiency to the taxpayer. Within 60 days of mailing of the notice, and prior to payment of the deficiency, the taxpayer was entitled to file an appeal with the Board of Tax Appeals, an agency independent of the Bureau of Internal Revenue. The only exception to this statutory provision permitting general access to the Board of Tax Appeals was that for a jeopardy assessment. The jeopardy-assessment provision, § 274 (d), permitted the Commissioner to assess and collect a deficiency immediately, bypassing various procedures set out in § 274 (a) for the ordinary assessment and collection of deficiencies. Even in the jeopardy-assessment situation, however, the taxpayer could gain access to the Board of Tax Appeals by posting a bond. § 279 (a).

Section 273 of the 1924 Act defined "deficiency," much as it is now defined, as the amount by which the tax due exceeds the tax shown on the taxpayer's return, or, "if no return is made by the taxpayer, then the amount by which the tax exceeds the amounts previously assessed (or collected without assessment) as a deficiency." § 273 (2). In cases in which no return was filed and no amount had previously been assessed or collected, § 273 (2) in effect defined a "deficiency" simply as the amount

of tax due. Since § 282—the termination provision—
provided that at the time of termination the Commis-
sioner would demand "immediate payment of the tax
for the taxable period so declared terminated and of the
tax for the preceding taxable year or so much of such tax
as is unpaid . . . ," and that the tax demanded would
become "immediately due and payable," the tax "due
and payable" at the time of the termination notice, to
the extent unreported, would appear to fit the definition
of "deficiency" in § 273 (2). This being so, the Gov-
ernment's assertion that under the 1924 Act, § 282 ter-
minations were not subject to the procedures of § 274 (d)
is incorrect, and much of the force of its argument from
the history of the statute is lost.

With the amendments made by the Revenue Act of
1926, c. 27, 44 Stat. 9, the statutory provisions
relevant to these cases took essentially their present
form. The jurisdiction of the Board of Tax Appeals
(subsequently renamed the Tax Court) was broadened,
in part by granting taxpayers subjected to jeopardy
assessments a means of having their assessment redeter-
mined by the Board without having to post bond as had
previously been required. Under the new jeopardy-
assessment procedures, the Commissioner could immedi-
ately assess the deficiency, but in addition to a demand
for payment, he was required to send a notice of defi-
ciency, § 279 (b), which allowed the jeopardy taxpayer
immediate access to the Board of Tax Appeals. § 274
(a). As in the 1924 Act, there was no indication that
taxpayers subjected to a jeopardy termination would
not then be assessed under the jeopardy-assessment
procedures to the extent a deficiency was owing, and
thereby allowed to follow the same route to the Board
of Tax Appeals that was available to other jeopardy
taxpayers.

In sum, to the extent that it sheds any light on the question at all, the legislative history seems to help the taxpayers rather than the Government. In the course of the development of a prepayment remedy and a jeopardy exception to that remedy between 1918 and 1926, taxpayers subjected to jeopardy terminations and those subjected to jeopardy assessments for nonterminated taxable years were consistently treated alike. In 1921, when the administrative remedy was first created, neither those subjected to a jeopardy assessment for a nonterminated year nor those subjected to a termination could avail themselves of that remedy. In 1924, those terminated and those subjected to jeopardy assessments for nonterminated years were similarly denied access to the Board of Tax Appeals, unless they filed a bond in the amount of the claim. And in 1926, when the scheme assumed its current form, there was no indication that Congress intended for the first time to treat the two groups separately by granting direct access to the Board of Tax Appeals to those subjected to a jeopardy assessment for a nonterminated year, but denying it to those subjected to an assessment following a jeopardy termination.

V

Based on the plain language of the statutory provisions, their place in the legislative scheme, and the legislative history, we agree with the taxpayers' reading of the pertinent sections of the Code.[26] Under that reading, the

---

[26] As a final reason for adopting their construction of the Code, the taxpayers argue that the Government's reading would violate the Due Process Clause of the Fifth Amendment. The basis for this claim is that under the assessment procedures of § 6861 et seq. the taxpayer is guaranteed access to the Tax Court within 60 days, while under the procedures suggested by the Government the taxpayer in a termination case could be denied access to a judicial forum for up to six months. See supra, at 173. Cf. Phillips v.

tax owing, but not reported, at the time of a § 6851 termination is a deficiency whose assessment and collection are subject to the procedures of § 6861 *et seq.* Section 6861 (b) requires a notice of deficiency to be mailed to a taxpayer within 60 days after the jeopardy assessment. Section 6863 bars the offering for sale of property seized until the taxpayer has had an opportunity to litigate in the Tax Court. Because the District Director failed to comply with these requirements in these cases, the taxpayers' suits were not barred by the Anti-Injunction Act,[27] § 7421 (a) of the Code. The judgment of the

---

*Commissioner,* 283 U. S. 589 (1931). Moreover, the taxpayers argue, under the procedures of § 6861 *et seq.* the property seized may not be sold until after a final determination by the Tax Court, § 6863, while under the Government's theory the property seized in a jeopardy termination may be immediately subject to sale. Because we agree with the taxpayers' construction of the Code, we need not decide whether the procedures available under the Government's theory would, in fact, violate the Constitution.

The taxpayers do not question here, and we do not consider whether, even if the jeopardy-assessment procedures of § 6861 *et seq.* are followed, due process demands that the taxpayer in a jeopardy-assessment situation be afforded a prompt post-assessment hearing at which the Government must make some preliminary showing in support of the assessment. See *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.,* 419 U. S. 601, 607 (1975); *Mitchell* v. *W. T. Grant Co.,* 416 U. S. 600, 610–611 (1974); *Fuentes* v. *Shevin,* 407 U. S. 67, 72 (1972).

[27] The Anti-Injunction Act generally bars suits to enjoin the assessment or collection of taxes. But § 7421 (a) is subject to several exceptions, one pertinent here: it does not forbid suits to enjoin the assessment of a deficiency, or a levy or proceeding in court for its collection, if the taxpayer has not been mailed a notice of deficiency and afforded an opportunity to secure a final Tax Court determination. § 6213 (a). On the other hand, this exception to the Anti-Injunction Act does not apply to jeopardy assessments made "as . . . provided in" § 6861. Thus jeopardy assessments ordinarily may not be enjoined. When, however, the IRS fails to follow the procedures of

United States Court of Appeals for the Sixth Circuit in No. 74–75 is affirmed. The judgment of the United States Court of Appeals for the Second Circuit in No. 73–1808 is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE STEVENS took no part in the consideration or decision of these cases.

MR. JUSTICE BRENNAN, concurring.

I join the Court's opinion, and the statutory construction that makes unnecessary the Court's addressing the claims of Mr. Laing and Mrs. Hall that they were denied

§ 6861 *et seq.,* as in these cases, it is not assessing "as . . . provided in" § 6861, and the § 6861 exception to § 6213 (a) is inapplicable. In such cases, § 6213 (a)'s exception to the Anti-Injunction Act becomes operative, and a suit to enjoin the collection of the jeopardy deficiency may be brought.

In No. 73–1808, petitioner Laing brought suit approximately three weeks after the jeopardy termination and assessment. Since the IRS has up to 60 days after a jeopardy assessment to mail the notice of deficiency, § 6861 (b), no action had yet been taken that was not in conformity with the jeopardy-assessment procedures, and the suit could properly have been dismissed at that time as barred by the Anti-Injunction Act. When 60 days passed without the mailing of a notice of deficiency, however, petitioner amended his complaint to include this violation of the procedures of § 6861. App. in No. 73–1808, p. 19. At that time the IRS was violating the required procedures, the Anti-Injunction Act bar was no longer applicable, and the District Court had jurisdiction to determine petitioner's claim. Accordingly, its dismissal of Laing's action was improper.

Respondent Hall in No. 74–75 likewise brought suit before the 60-day grace period had expired (although the 60-day period subsequently lapsed without the issuance of the required notice of deficiency). Mrs. Hall alleged, however, that the IRS was offering her automobile for sale before issuing her a notice of deficiency and

procedural due process secured by the Fifth Amendment. Decision of that question is therefore expressly reserved, *ante,* at 184 n. 26. I write only to state my views of the considerations raised by the due process claim.

The Court's construction of the relevant statutes permits the IRS to seize a taxpayer's assets upon a finding by the Commissioner in compliance with § 6851 (a)(1). No hearing is required, judicial or administrative, prior to the seizure. But it cannot be gainsaid that the risk of erroneous determinations by the Commissioner with consequent possibility of irreparable injury to a taxpayer is very real. This suffices to bring due process requirements into play.

The "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Boddie* v. *Connecticut,* 401 U. S. 371, 379 (1971) (emphasis in original). See, *e. g., Bell* v. *Burson,* 402 U. S. 535, 542 (1971); *Goldberg* v. *Kelly,* 397 U. S. 254 (1970). The precise timing and attributes of the due process requirement, however, depend upon accommodating the competing interests involved. *Goss* v. *Lopez,* 419 U. S. 565, 579 (1975); *Morrissey* v. *Brewer,* 408 U. S. 471, 481 (1972); *Cafeteria Workers* v. *McElroy,* 367 U. S. 886, 895 (1961).

Governmental seizures without a prior hearing have been sustained where (1) the seizure is necessary to protect an important governmental or public interest, (2) there is a "special need for very prompt action," and

affording her the opportunity to litigate in the Tax Court, an action that violated § 6863. Since the offering for sale was not in conformity with the jeopardy-assessment procedures of § 6861 *et seq.,* the Anti-Injunction Act bar was inapplicable, and the levy and subsequent sale could properly be enjoined under § 6213 (a).

(3) "the standards of a narrowly drawn statute" require that an official determine that the particular seizure is both necessary and justified. See *Fuentes* v. *Shevin,* 407 U. S. 67, 91 (1972). Seizures pursuant to jeopardy assessments are clearly necessary to protect important governmental interests and there is a "special need for very prompt action." But § 6851 (a)(1), although requiring an official determination that the particular seizure is both necessary and justified, nevertheless falls short, in my view, of meeting due process requirements. This is because present law denies an affected taxpayer access to any forum for review of jeopardy assessments for up to 60 days.

In *Goss* v. *Lopez,* *supra,* the Court held that notice and hearing must follow a deprivation "as soon as practicable." 419 U. S., at 582–583. The Louisiana statute upheld in *Mitchell* v. *W. T. Grant Co.,* 416 U. S. 600 (1974), entitled debtors whose assets had been seized to a hearing immediately following seizure and to invalidation of the seizure unless the creditor could prove the basis for the seizure, *id.,* at 606. In contrast, a Georgia garnishment statute was invalidated for want of any opportunity "for an early hearing at which the creditor would be required to demonstrate at least probable cause for the garnishment." *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.,* 419 U. S. 601, 607 (1975). Thus, the governing due process principle obliges the IRS to provide a prompt hearing at which the IRS must prove "at least probable cause" for its claim.

But present law requires that taxpayers wait up to 60 days before challenging jeopardy assessments by filing suit in the Tax Court. However expeditiously the Tax Court handles the claim, that court is not required to decide the merits within any specified time, and no provision is made for a prompt preliminary evaluation of

the basis for the assessment. In my view, such delay would be constitutionally permissible only if there were some overriding governmental interest at stake, and the IRS suggested none in either of these cases.* But even if delay in judicial review on the merits were justifiable, due process would at least require some supporting rationale for denying taxpayers the opportunity for a prompt preliminary determination by an unbiased tribunal on the validity of the basis for the assessment. Again, none was offered in either of these cases.

MR. JUSTICE BLACKMUN, with whom THE CHIEF JUSTICE and MR. JUSTICE REHNQUIST join, dissenting.

Every experienced tax practitioner is aware of the problems of tax collection and tax evasion, and of the frequent need for prompt action on the part of those having responsibility for the protection of the revenues. Every experienced tax practitioner also knows that our Internal Revenue Code is a structured and complicated instrument—perhaps too complex—that deserves careful and historical analysis when, as here, longstanding provisions of that Code are challenged.

The Court in these two cases today gives every evidence of pursuing a quest for what it seems to regard as a desirable or necessary symmetry and, in my view, and

---

*The dissenting opinion would require no justification for even a six-month delay, apparently on the view that tax seizures are somehow different from other deprivations for due process purposes. I am aware of no precedent drawing that distinction. *Phillips* v. *Commissioner*, 283 U. S. 589 (1931), concerned a procedure that offered taxpayers an alternative of seeking a prompt determination before the Board of Tax Appeals, the predecessor to the Tax Court, before payment and without posting any bond. *Id.,* at 598. The bond referred to in the dissenting opinion, *post,* at 210–211, was required pending review in the court of appeals of the Board of Tax Appeals' decision.

most unfortunately, indulges in a faulty analysis of the Code's structure and misinterprets the historical development of the statutes. It is led astray, I fear, by the emotional appeal of the facts in Mrs. Hall's case, involving, as it does, her husband's arrest on drug-related charges [1] and the seizure by the Internal Revenue Service of Mrs. Hall's Volkswagen automobile. I have little doubt that if Mr. Laing's case had come here alone and unfettered by the coincidental appearance of Mrs. Hall's case, the Court would have denied certiorari to Mr. Laing out of hand or, if not, would readily have affirmed. But Mr. Laing's case did not arrive alone. Thus the "equities" and the extremes of Mrs. Hall's case, with their sad overtones, tend to counterbalance, and now have overbalanced, the lack of "equity" in Mr. Laing's case. The result is that the Internal Revenue Service is deprived of a weapon it has long possessed under the Code and of a device it obviously needs in combatting questionable tax practices and tax evasion by those who do not pay their rightful taxes and who thereby increase the burden of those who do.

It is unfortunate, of course, that the issues are imbedded in a complicated and detailed tax code. Correct analysis, I submit, demands conclusions opposite to those reached by the Court today. I therefore dissent.

# I

For an understanding of the purport and reach of § 6851 (a)(1), an examination of the statutory structure of which it is a part is indicated.

*A. The customary deficiency procedure.*—This is prescribed by Subchapter B of Chapter 63 of the Code under the heading "Assessment." The term "deficiency" is defined in § 6211 (a), 26 U. S. C. § 6211 (a),

---

[1] Mr. Hall evidently was convicted. Tr. of Oral Arg. 45.

(1970 ed. and Supp. IV), essentially as the excess of the tax imposed by the Code over the amount of tax shown on the taxpayer's return as filed. If, however, the taxpayer files no return, or shows no tax on the return he does file, the deficiency is the amount of the tax imposed by the Code. Treas. Reg. § 301.6211–1 (a), 26 CFR § 301.6211–1 (a) (1975).

Once the Commissioner determines that a deficiency exists, he "is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail." 26 U. S. C. § 6212 (a) (1970 ed., Supp. IV). Under § 6213 (a) (1970 ed., Supp. IV), the taxpayer, within 90 days after the mailing of that notice, may file a petition with the United States Tax Court for a redetermination of the deficiency. During this period—and, if a petition is filed with the Tax Court, until that court's decision has become final—the Commissioner, with one exception hereinafter noted, is precluded from assessing the deficiency, from making a levy, and from proceeding in court for its collection. Any such move on the part of the Internal Revenue Service during that time "may be enjoined by a proceeding in the proper court." Section 6213 (a) expressly makes the Anti-Injunction Act, § 7421 (a), inapplicable under those circumstances.

The sole exception to this preclusion of the Service during the customary deficiency procedure is also set forth explicitly in § 6213 (a). It is that the preclusion is not effective with respect to a jeopardy assessment under § 6861. No like exception, or reference, however, is made with respect to § 6851, the statute that empowers the Commissioner to terminate the taxpayer's taxable period when collection of the tax may be in jeopardy.

*B. The termination-of-the-taxable-period statute.*— This is the above-mentioned, and critical, § 6851, subsection (a)(1) of which is set forth in n. 1 of the Court's

opinion, *ante,* at 163. The statute constitutes the entire Part I of Subchapter A (Jeopardy) of Chapter 70 of the Code.

Our income tax system is primarily a self-reporting and self-assessment one. It is "based upon voluntary assessment and payment, not upon distraint." *Flora* v. *United States,* 362 U. S. 145, 176 (1960). See *Helvering* v. *Mitchell,* 303 U. S. 391, 399 (1938); Treas. Reg. § 601.103 (a), 26 CFR § 601.103 (a) (1975). Congress, nonetheless, early recognized that there would be instances where the Service must take immediate affirmative action in order to safeguard the collection of a tax.[2] Section 6851 (a)(1) fulfills this congressional concern and permits the District Director, see Treas. Reg. § 1.6851–1 (a), 26 CFR § 1.6851–1 (a) (1975), to terminate the taxable period if he finds that the taxpayer designs an act tending to prejudice or render ineffectual the collection of income tax for the current or the preceding tax year.[3] When this is done, notice of the termination must be given the taxpayer together with a demand for immediate payment of the tax for the taxable period so terminated. The tax thereupon becomes immediately due and payable.[4]

---

[2] See n. 10, *infra.*

[3] The reference in the statute to the "preceding taxable year" enables the Commissioner to exercise the termination power after the close of the preceding year but prior to the filing of the return for that year. See, *e. g., Irving* v. *Gray,* 479 F. 2d 20, 25 (CA2 1973); *United States* v. *Johansson,* 62–1 U. S. T. C. 83197 (SD Fla. 1961), aff'd in part and remanded, 336 F. 2d 809 (CA5 1964).

[4] A return for a taxable *period* terminated under § 6851 (a), and called for by § 443 (a)(3), is to be distinguished, despite the confusing use of the term "taxable year" in § 443 (a)(3), from a return for what is a true and self-constituted short period of the kind to which §§ 443 (a)(1) and (2) relate, that is, the interim period occasioned by a change in the taxpayer's annual accounting period,

Section 6851, standing alone, however, is not sufficient for a collection procedure because it does not contain its own assessment authority. The statute provides simply for the termination of the taxable period prematurely, and the authority must be found elsewhere in the statutory scheme.[5]

That assessment authority is granted by § 6201 (a) of the Code, 26 U. S. C. § 6201 (a).[6] This empowers the Commissioner "to make . . . assessments of all taxes . . . imposed by this title." An assessment is made by recording the liability of the taxpayer in the Service's books of account. § 6203. If, after demand, the taxpayer fails to pay, the Commissioner may invoke § 6321, which provides that the amount shall be a lien in favor of the United States upon the property of the taxpayer. The Service has power, after 10 days' notice and demand in a nonjeopardy situation, to collect the tax by levy and distraint. § 6331 (1970 ed. and Supp. IV).

----

or when the taxpayer is in existence during only part of the entire taxable year.

[5] The Government, on at least one occasion in the past, has contended that § 6851 did contain its own assessment authority. See *Schreck* v. *United States*, 301 F. Supp. 1265, 1276 (Md. 1969). In the present cases, however, the Government states that the statute does not go so far. Brief for United States 20.

[6] Section 6201 (a) reads in pertinent part:

"The Secretary or his delegate is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law, which have not been duly paid by stamp at the time and in the manner provided by law."

Respondent Hall suggests that § 6201 (a) by its terms is confined to taxes paid by stamp. I read the statute otherwise, for I regard the reference to payment effected "by stamp" as exclusive, rather than restrictive, of the assessment power.

Section 6851 (b) permits the Service to reopen the terminated taxable period each time the taxpayer is found to have received income within the current taxable year but since the termination. Similarly, the taxpayer himself may reopen the terminated period if he files "a true and accurate return." Under § 6851 (e), the taxpayer may avoid early collection by furnishing a bond to insure the timely making of a return and the payment of the tax.

Nowhere in these several subsections of § 6851 does the word "deficiency" appear. The section contains no words of authorization or requirement that the Commissioner issue a notice of deficiency. Seemingly, once the tax is made immediately due by termination of the taxable period, the Commissioner may exercise his general assessment authority and proceed forthwith to collect through lien, levy, and distraint.

*C. The jeopardy-assessment statute.*—This, so far as income, estate, and gift taxes are concerned, all of which require returns, is § 6861 of the Code, 26 U. S. C. § 6861.[7] It and the three succeeding sections constitute Part II (Jeopardy Assessments) of Subchapter A (Jeopardy) of Chapter 70 of the Code. Section 6861, like § 6851 (a), is designed to achieve collection under exigent circumstances.

Section 6861 is invoked only *after* the date upon which the tax for the full year is due. This stands in contrast

---

[7] Section 6861 (a) reads:

"If the Secretary or his delegate believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213 (a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary or his delegate for the payment thereof."

to § 6851 (a), which permits premature termination of the taxable period. In other words, § 6851 (a) serves to advance the time when a tax becomes due and payable, whereas § 6861 serves to advance the time for collection of a tax already due. Jeopardy to collection lies in the background of both situations and triggers the invocation of either statute.

In sharp contrast with § 6851 (a), § 6861 (a) refers specifically to a "deficiency," as that term is defined in § 6211. The further reference in § 6861 (a) to § 6213 (a) is of significance. Section 6213 (a), as has been noted, provides for the filing by the taxpayer with the Tax Court of a petition for redetermination of the deficiency. By its reference to § 6213 (a), § 6861 (a) thus authorizes a jeopardy assessment, despite the available path for the taxpayer to the Tax Court and despite the presence of the otherwise operative preclusion provisions of § 6213 (a). Also, it confirms that a jeopardy assessment made under § 6861 (a) is reviewable in the Tax Court. That this is so is convincingly demonstrated by the additional fact that § 6861 (b) provides that if a jeopardy assessment is made before the mailing of any notice of deficiency, the Commissioner shall mail a notice within 60 days after the making of the assessment. Thus, although the Service in such a jeopardy situation is not restrained from immediate levy and collection, the taxpayer is nevertheless assured his relatively prompt access to the Tax Court for redetermination of the deficiency. In addition, under § 6863 (a), 26 U. S. C. § 6863 (a), the taxpayer may post a proper bond and thereby stay collection. And, absent specified exigent circumstances, sale of property seized for collection is not to be effected during the period of Tax Court review. § 6863 (b)(3).

D. *The Federal Anti-Injunction Act.*—This statute,

§ 7421 (a), generally prohibits suits to restrain assessment or collection of tax. It reads:

"Except as provided in sections 6212 (a) and (c), 6213 (a), and 7426 (a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

The statute had its origin over a century ago in § 10 of the Revenue Act of Mar. 2, 1867, 14 Stat. 475.[8] See Rev. Stat. § 3224. It was enacted to prevent in the federal system the type of injunctive suits that had plagued tax collections by the States. The Court has recognized the congressional concern underlying the statute, namely, that if courts were to exercise injunctive power with respect to the collection of taxes, the Government's very existence could be threatened. See *Cheatham* v. *United States*, 92 U. S. 85, 89 (1876); *State Railroad Tax Cases*, 92 U. S. 575, 613 (1876); *Snyder* v. *Marks*, 109 U. S. 189, 193–194 (1883); *Bob Jones University* v. *Simon*, 416 U. S. 725, 736–737 (1974). The statute has been uniformly applied to bar suits before collection except in certain specific and delimited circumstances.

The first exception to the statute's bar is spelled out in the initial words of § 7421 (a) itself: the Act does not preclude injunctive suits within the contemplation of §§ 6212 (a) and (c) and 6213 (a). These sections, as has been seen, concern situations where a notice of deficiency is required and where jurisdiction of the United States Tax Court is thereby afforded.

---

[8] "That section nineteen [of the Act of July 13, 1866, 14 Stat. 152] is hereby amended by adding the following thereto: 'And no suit for the purpose of restraining the assessment or collection of tax shall be maintained in any court.'"

The second exception is also spelled out in the prefatory words of § 7421 (a): the Act does not apply to an injunctive suit within the contemplation of §§ 7426 (a) and (b)(1), 26 U. S. C. §§ 7426 (a) and (b)(1). These sections, however, concern a civil action instituted by a person other than the taxpayer, such as a person claiming a prior lien, and have no possible application here. See *Bob Jones University* v. *Simon,* 416 U. S., at 731–732, n. 6.

The third exception is of judicial origin. The Court, in *Enochs* v. *Williams Packing Co.,* 370 U. S. 1, 7 (1962), observed that "if it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and . . . the attempted collection may be enjoined if equity jurisdiction otherwise exists." This obviously is a very narrow exception and is subject to a twofold test: a clear indication that the Government cannot prevail, and the presence of an equity consideration in the sense of threat of irreparable injury for which there is no adequate legal remedy. The Court recently reaffirmed the *Williams Packing* exception in *Bob Jones University* v. *Simon, supra,* and in *Commissioner* v. *"Americans United" Inc.,* 416 U. S. 752 (1974). It noted that a somewhat different attitude had been evident in the 1930's. See *Miller* v. *Standard Nut Margarine Co.,* 284 U. S. 498 (1932), and *Allen* v. *Regents of the University System of Georgia,* 304 U. S. 439 (1938).

There is no question, of course, that the present suits instituted by petitioner Laing and respondent Hall are actions to restrain the collection or enforcement of tax, within the meaning of § 7421 (a). These parties, however, do not contend that the *Williams Packing* exception is applicable to their respective cases. I necessarily agree that the exception affords Mr. Laing and

Mrs. Hall no avenue of relief, for there is no indication in the records that on the merits the Government under no circumstances could prevail.[9]

## II

This review of the statutory structure clearly reveals the following:

1. The congressionally intended normal procedure is to allow the taxpayer, if he desires it, some "breathing space" prior to exaction of the additional tax that is claimed. The avenue provided to accomplish this result is the route to the Tax Court where the issues, factual and legal, may be resolved prior to collection. This avoids the necessity of the taxpayer's disgorgement of funds, to his current financial detriment, even though he might ultimately prevail and recoup by refund all or a substantial part of the amount he pays. The choices the taxpayer makes, and the risks he assumes, by this route, include the forgoing of trial of the factual issues by a jury, having his trial before a specialist judge not assigned to the taxpayer's local district, and the accruing of interest on any deficiency ultimately redetermined, § 6601 (a), 26 U. S. C. § 6601 (a) (1970 ed., Supp. IV). If he selects the other route, that is, payment of the asserted deficiency, filing claim for refund, and suit, the taxpayer (if he chooses the district court rather than the Court of Claims) has his case tried before a United States district judge of his own district, with a jury available,

---

[9] I do not foreclose the possibility that in some case the Service's action in terminating a taxable period would come within the *Williams Packing* exception if the termination were so fictitious and without foundation that under no circumstances could the Government prevail on the merits. This view was taken by the Fifth Circuit in *Willits* v. *Richardson*, 497 F. 2d 240 (1974). See generally Note, Use of I. R. C. Section 6851: Exaction in the Guise of a Tax?, 6 Loyola U. L. J. 139, 151–158 (1975).

and it is the Government, not the taxpayer, that bears the burden of accruing interest, § 6611, 26 U. S. C. § 6611 (1970 ed., Supp. IV).

2. Despite this available avenue of litigation in the Tax Court before payment, and its use by the taxpayer after a notice of deficiency is issued, the Commissioner nonetheless may assess and collect, subject to the taxpayer's fulfillment of prescribed conditions, in a jeopardy situation. § 6861. This enables the Government to protect the revenues, but at the same time the path to the Tax Court is preserved for the taxpayer.

3. Jeopardy collection power is also vested in the Commissioner during the taxpayer's taxable period before his tax for the year can be determined. § 6851 (a). This, too, protects the revenues.

4. Both § 6861 and § 6851 are directed to critical and exigent circumstances. In this respect, neither statute is a part of the normal assessment and collection process. The one, § 6861, the "ordinary" jeopardy-assessment provision, operates *within* that usual procedure and while it is underway. The other, § 6851, however, operates separate and apart from that procedure and, indeed, inasmuch as the taxable year is not at an end, or a return for it is not yet overdue, before that procedure can get underway at all.

5. It would seem to follow, then, that §§ 6861 and 6851, although they are similar in character and although both are directed at emergency situations, are separate and distinct. Of the two, § 6851 is the more extreme and perilous, for its impact comes in midstream, that is, during the taxable year rather than after its close and a return for it has been filed. See *Ludwig Littauer & Co.* v. *Commissioner,* 37 B. T. A. 840, 842 (1938) (reviewed by the Board).

6. Because § 6851 is concerned with the situation prior to the overdue date for the filing of the year's return, that

is, with premature termination of a taxable period, at a time when the computation of the tax for the full year cannot be made or not yet has been made, it is clear that no deficiency as such can be ascertained, that no notice of deficiency can be issued, and that none is required. These terms and concepts have no sensible application and relationship to the § 6851 procedure.

## III

The foregoing analysis and conclusion that a notice of deficiency is not required when a taxable period is prematurely terminated under § 6851, despite the Court's disavowal, is confirmed by the legislative history. This history demonstrates that §§ 6851 and 6861, although now consecutively placed in the present Code, are discrete and independent provisions, with the consequences that assessment authority for a termination under § 6851 does not derive from § 6861, as the taxpayers here assert and the Court is now led to believe, and that assessment following termination of a taxable period was not intended to be subject to review by the Tax Court.

As is often the case in tax matters, the successive Revenue Acts primarily present the pertinent legislative history.

The provision allowing premature termination of a taxable period where collection was feared jeopardized first appeared as § 250 (g) of the Revenue Act of 1918, 40 Stat. 1084.[10] The language of § 250 (g) ob-

---

[10] "If the Commissioner finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the tax for the taxable year then last past or the taxable year then current unless such proceedings be brought without delay, the Commissioner shall declare the taxable period for such taxpayer terminated at the end of the calendar month

viously comports substantially with the language of the current § 6851 (a). An assessment for a terminated period was made under the general assessment authority provided by Rev. Stat. § 3182. Judicial review at that time could be obtained only after payment of the tax and by way of a refund suit in the United States district court or in the Court of Claims. Rev. Stat. § 3226. See 28 U. S. C. § 1346 (a)(1).

Section 6861, on the other hand, evolved independently and initially with the Revenue Act of 1921. It was born as a proviso to § 250 (d) of that Act. 42 Stat. 266. Section 250 (d) established an administrative appeal procedure for resolution of taxpayer disputes; assessment of a deficiency could not be made pending final decision on the administrative appeal. This deferral, however, was not compelled where the Commissioner determined that collection was in jeopardy; when he so determined, assessment could be made immediately. Despite this introduction by the 1921 Act of the administrative appeal procedure, § 250 (g) of the 1918 Act, providing for termination of the taxable period, was continued as

then last past and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of said tax as is unpaid, whether or not the time otherwise allowed by law for filing return and paying the tax has expired; and such taxes shall thereupon become immediately due and payable. In any action or suit brought to enforce payment of taxes made due and payable by virtue of the provisions of this subdivision the finding of the Commissioner, made as herein provided, whether made after notice to the taxpayer or not, shall be for all purposes presumptive evidence of the taxpayer's design."

The presence of § 250 (g) so soon after the inception of the modern federal income tax in 1913, see the Sixteenth Amendment and the Tariff Act of Oct. 3, 1913, § II, 38 Stat. 166, discloses Congress' early and continuing concern with tax evasion.

§ 250 (g) of the 1921 Act, 42 Stat. 267, without any change material here and without reference to the newly established administrative appeal procedure. See S. Rep. No. 275, 67th Cong., 1st Sess., 20–21 (1921). And the assessment authority continued to be provided only by Rev. Stat. § 3182.

Congress soon recognized that taxpayers might not be convinced of the impartiality of an administrative appeal within the then Bureau of Internal Revenue. Accordingly, by § 900 of the Revenue Act of 1924, 43 Stat. 336, the Board of Tax Appeals was created as an independent agency in the Executive Branch. The taxpayer, prior to payment of his tax, could obtain a review in the Board whenever the Commissioner disagreed with the amount of tax reported. See H. R. Rep. No. 179, 68th Cong., 1st Sess., 7–8 (1924). The Board, however, was given only limited jurisdiction; it was confined to deficiencies in income, estate, and gift taxes and to claims for abatement of deficiencies. Revenue Act of 1924, §§ 900 (e), 274, 279, 308, 312, and 324, 43 Stat. 337, 297, 300, 308, 310, and 316. Review of the Commissioner's termination of a taxable period, however, was not cognizable before the Board. Under § 282 of the 1924 Act, 43 Stat. 302, the taxpayer whose taxable period was terminated could avoid immediate collection only by furnishing security that he would make a timely return and pay the tax when due.

The 1924 Act also introduced a more precise definition of the term "deficiency" to supplant the definition contained in the 1921 Act.[11] The new definition, contained in the 1924 Act's §§ 273 (1) and (2), 43 Stat. 296, is virtually identical to the present definition in § 6211 (a)

---

[11] Section 250 (b) of the Revenue Act of 1921, 42 Stat. 265, had defined "deficiency" as the difference between "the amount already paid" and "that which should have been paid."

of the 1954 Code and in Treas. Reg. § 301.6211–1, 26 CFR § 301.6211–1 (1975). The committee reports described this new definition in terms that indicate that a deficiency could not be determined until the time for filing the return had arrived, that is, until a date after the close of the taxable year. See H. R. Rep. No. 179, 68th Cong., 1st Sess., 24 (1924); S. Rep. No. 398, 68th Cong., 1st Sess., 30 (1924). There was nothing indicating that the Congress intended that the definition of "deficiency" was to encompass the amount declared due and payable upon the termination of a taxable period. The exception for the situation where collection after the close of the taxable year and after the passing of the due date for the filing of the return would be jeopardized by delay, however, was carried forward to the Board review created by the 1924 Act, and the Commissioner could immediately assess and collect notwithstanding the taxpayer's ability to go to the Board. Revenue Act of 1924, §§ 274 (d) and 279, 43 Stat. 297 and 300.

The Revenue Act of 1926, 44 Stat. 9, filled some interstices of Board jurisdiction. Direct appeal of Board decisions to the then circuit courts of appeals was provided. § 1001 (a), 44 Stat. 109. The Board was given jurisdiction to determine that the taxpayer had overpaid his tax as well as to determine that a deficiency existed. The definition of "deficiency" remained the same. § 273, 44 Stat. 55. Thus, the taxpayer whose taxable period was prematurely terminated still could not go to the Board.

The Revenue Acts following the 1926 Act, until and including the Internal Revenue Code of 1939, 53 Stat. pt. 1, effected no significant change in the termination or jeopardy-assessment provisions or in the jurisdiction of the Board of Tax Appeals.

The 1954 Code culminated the legislative development of §§ 6861 and 6851 and provided the current section

designations. Two minor changes were made in the statutes that are pertinent here, but neither altered the jurisdictional framework of the Tax Court which, by § 504 of the Revenue Act of 1942, 56 Stat. 957, had supplanted the Board of Tax Appeals. The first was the amendment of the termination statute, § 6851, by the addition of its present subsection (b). This permitted the reopening of the terminated taxable period either by the Commissioner or by the taxpayer. See Treas. Reg. §§ 1.6851–1 (b) and (c), 26 CFR §§ 1.6851–1 (b) and (c) (1975); H. R. Rep. No. 1337, 83d Cong., 2 Sess., A421 (1954); S. Rep. No. 1622, 83d Cong., 2d Sess., 597 (1954). The second change was the addition of § 6863 (b)(3) to authorize a stay of the sale of property seized after a jeopardy assessment under § 6861 pending decision by the Tax Court. No similar stay was made explicitly available with respect to the termination provisions of § 6851.

This legislative history particularly reinforces two aspects of the conclusions, drawn above, upon analysis of only the language of the presently effective statutes:

The first is the inescapable fact that the assessment authority for an amount made "immediately due and payable" under § 6851 (a) is not § 6861 but is the general authority granted by § 6201. Indeed, during the time the Revenue Act of 1918 was in effect, that is, until the Revenue Act of 1921 was adopted, only § 6851's predecessor was in existence; the predecessor of § 6861 had not yet appeared. Thus, I disagree with the suggestions contained in *Clark* v. *Campbell*, 501 F. 2d 108, 121 (CA5 1974), in *Rambo* v. *United States*, 492 F. 2d 1060, 1064 (CA6 1974), and in *Schreck* v. *United States*, 301 F. Supp. 1265, 1273 (Md. 1969), that the placement of § 6861 in the Code immediately following § 6851 served to establish a *new* procedure mandatory for a proceeding under § 6851. That approach is expressly

foreclosed, in any event, by § 7806 (b) of the 1954 Code, 26 U. S. C. § 7806 (b), providing that no inference shall be drawn by reason of the location or grouping of any particular section or portion of the tax title of the Code. See *United States* v. *Ryder,* 110 U. S. 729, 740 (1884); *Aberdeen & Rockfish R. Co.* v. *SCRAP,* 422 U. S. 289, 309 n. 12 (1975). The Commissioner's power to terminate a taxable period under § 6851 and then to assess under § 6201 is not at all dependent upon § 6861, and there is no basis for the incorporation of the notice-of-deficiency requirement of § 6861 (b) into § 6851.

Not only do §§ 6851 and 6861 have separate and independent origins and dates of birth, but their legislative developments in subsequent years are distinctly different. Dealing with jeopardy situations in disparate ways, the statutes should be considered as independent and not as one provision tied to the requirements of the other.

Secondly, the legislative evolution of the two sections and the creation of the Board of Tax Appeals demonstrate that an amount assessed pursuant to a § 6851 termination is not a "deficiency" within the meaning of § 6211. A glance at the 1921 Act reveals the establishment and existence of the administrative appeal which was the predecessor of the later independent review in the Board of Tax Appeals. Section 250 (b) of that Act defined "deficiency" as the difference between "the amount already paid" and "that which should have been paid." When a taxable year is prematurely terminated, the tax "which should have been paid" is indeterminable because none was required to have been paid by that time. Thus, the deficiency concept was inapplicable to an assessment made for a terminated period. No notice of deficiency would be issued for the period, and the administrative appeal under the 1921 Act would not be available.

Exactly the same analysis applies to the definition of "deficiency" under the 1954 Code. Prior to the end of the taxable year neither the Commissioner nor the taxpayer is able to ascertain the tax imposed by the Code. A "deficiency" cannot be determined before the close of a taxable year. The requirement that a notice of deficiency be issued, therefore, does not apply to a § 6851 (a) termination of a taxable period.[12]

I therefore conclude that the Commissioner is not required to issue a notice of deficiency to a taxpayer whose taxable period is terminated pursuant to the provisions of § 6851 (a) of the Code. The statutory scheme does not require this, and the legislative history demonstrates that an assessment pursuant to a termination does not give rise to a "deficiency." From this it follows that, as a statutory matter, the Anti-Injunction Act, § 7421 (a) of the Code, bars the suits by petitioner Laing and respondent Hall to enjoin the assessment and collection of taxes for their respective terminated taxable periods. This conclusion, of course, is not an end to the cases, for there remain the question of remedy available to persons in their position and the constitutional issue that is thereby raised.

IV

The courts that have arrived at a result contrary to the one I reach on the statutory issue have sug-

---

[12] The Tax Court itself consistently has denied jurisdiction on its part over a period terminated under § 6851 (a), and has done so on the ground that the termination results in "but a provisional statement of the amount which must be presently paid as a protection against the impossibility of collection." *Ludwig Littauer & Co.* v. *Commissioner,* 37 B. T. A. 840, 842 (1938) (reviewed by the Board). See *Puritan Church—The Church of America* v. *Commissioner,* 10 T. C. M. 485, 494 (1951), aff'd, 93 U. S. App. D. C. 129, 209 F. 2d 306 (1953), cert. denied, 347 U. S. 975 (1954); *Jones* v. *Commissioner,* 62 T. C. 1 (1974). See also *Page* v. *Commissioner,* 297 F. 2d 733 (CA8 1962).

gested that this result would produce "significant consti-
tutional problems." *Rambo* v. *United States,* 492 F. 2d,
at 1064–1065. See also *Schreck* v. *United States,* 301 F.
Supp., at 1281. This constitutional reservation has been
prompted by the concern that if a notice of deficiency
is not required for a terminated taxable period, the tax-
payer does not have the benefit of immediate access to
the Tax Court.

To be sure, as has been noted above, Tax Court juris-
diction to determine liability prior to payment is predi-
cated upon the existence of a "deficiency," within the
meaning of § 6211 (a), and upon the Commissioner's
formal issuance of a notice of deficiency pursuant to
§ 6212 (a). As a result, notices of deficiency have been
described as " 'tickets to the tax court.' " *Corbett* v. *Frank,*
293 F. 2d 501, 502 (CA9 1961). See *Mason* v. *Commis-
sioner,* 210 F. 2d 388 (CA5 1954). But this lack of
access to the Tax Court by the taxpayer who finds him-
self in a terminated taxable period situation does not
mean that he is without effective judicial remedy to
challenge the Commissioner's action. Lack of access to
the Tax Court does not equate with a denial of Fifth
Amendment due process if due process is otherwise avail-
able. And it is at once apparent that the taxpayer has
a variety of remedies to test the validity of the Com-
missioner's action:

First, a refund suit is possible. Once there is a seizure
of any property of the taxpayer in satisfaction of the
assessment for the terminated period, the taxpayer may
file a claim for refund either by filing the formal claim
(Form 843) or by making a short-period return and show-
ing an amount due that is less than the amount seized.
See *Rogan* v. *Mertens,* 153 F. 2d 937 (CA9 1946). See
also Treas. Reg. § 301.6402–3 (a)(1), 26 CFR § 301.-
6402–3 (a)(1) (1975). The Commissioner, of course, has

up to six months to process the claim. §§ 6532 (a) and 7422 (a) of the Code, 26 U. S. C. §§ 6532 (a) and 7422 (a). Immediately upon denial of the claim, or upon the expiration of six months with no action by the Commissioner,[13] the taxpayer may commence suit for refund in the district court or in the Court of Claims. See 28 U. S. C. § 1346 (a)(1). The jurisdiction of these courts over a refund suit does not depend upon the existence of a formally asserted "deficiency," as does the jurisdiction of the Tax Court.

Second, the taxpayer subject to a § 6851 termination may await the end of his taxable year and then file a full-year return and claim an overpayment and refund and in due course seek relief in court. See *Irving* v. *Gray*, 479 F. 2d 20, 24 (CA2 1973).

Third, the taxpayer again may await the end of the taxable year and file a full-year return. The Commissioner may then determine that additional tax is due and, if so, the statutory definition of a "deficiency" will be met and a notice of deficiency will issue. When this happens, the taxpayer is in a position to seek a redetermination in the Tax Court, contesting the additional tax so asserted or claiming an overpayment for the year.

Although a taxpayer whose taxable period is terminated thus may not gain immediate access to the Tax Court, he does have available appropriately prompt avenues of relief principally in the district court or in the Court of Claims. There is, of course, no constitutional

---

[13] The six-month period, of course, is the maximum, not the minimum. Petitioner Laing, in fact, filed a claim for refund on March 1, 1973. It was denied just *eight* days later, on March 9. He was then in a position to sue and did so. Brief for Petitioner Laing 34 n. 11; Brief for United States 7 n. 4.

The maximum six months' wait, in order to accommodate the administrative operation, surely is not *per se* unconstitutional. See *Dodge* v. *Osborn*, 240 U. S. 118, 122 (1916).

requirement that every tax dispute be adjudicable in the Tax Court. In fact, that court's jurisdiction is limited to income, estate, and gift taxes.

It must be made clear that, whether the taxpayer whose taxable period has been terminated files a short-period refund claim or one for a full taxable year, he still may sue for refund even if the value of the property seized is less than the amount of the assessment made against him. There is no requirement in this situation that he pay the full amount of the assessment before he may claim and sue for a refund.

At this point, *Flora* v. *United States,* 357 U. S. 63 (1958), on rehearing, 362 U. S. 145 (1960), deserves comment. In that case the Court held that a federal district court does not have jurisdiction of an action for refund of a part payment made by a taxpayer on an assessment. It ruled that the taxpayer must pay the full amount of the assessment before he may challenge its validity in the court action. Payment of the entire deficiency thus was made a prerequisite to the refund suit. The ruling, however, was tied directly to the jurisdiction of the Tax Court where litigation prior to payment of the tax was the usual order of the day. 362 U. S., at 158–163. The holding thus kept clear and distinct the line between Tax Court jurisdiction and district court jurisdiction. The Court said specifically:

> "A word should also be said about the argument that requiring taxpayers to pay the full assessments before bringing suits will subject some of them to great hardship. This contention seems to ignore entirely the right of the taxpayer to appeal the deficiency to the Tax Court without paying a cent." *Id.,* at 175.

This passage demonstrates that the full-payment rule applies only where a deficiency has been noticed, that is,

only where the taxpayer has access to the Tax Court for redetermination prior to payment. This is the thrust of the ruling in *Flora*, which was concerned with the possibility, otherwise, of splitting actions between, and overlapping jurisdiction of, the Tax Court and the district court. *Id.*, at 163, 165–167, 176. Where, as here, in these terminated period situations, there is no deficiency. and no consequent right of access to the Tax Court, there is and can be no requirement of full payment in order to institute a refund suit. The taxpayer may sue for his refund even if he is unable to pay the full amount demanded upon the termination of his taxable period. *Irving* v. *Gray,* 479 F. 2d, at 24–25, n. 6; *Lewis* v. *Sandler,* 498 F. 2d 395, 400 (CA4 1974).

I recognize that on occasion the refund procedure may cause some hardship for the terminated taxpayer whose entire assets may be seized and who may be required to wait as long as six months before filing his refund suit. Indeed, this hardship was one of the reasons for establishing the Board of Tax Appeals as a prepayment forum in the first place. See H. R. Rep. No. 179, 68th Cong., 1st Sess., 7 (1924); S. Rep. No. 398, 68th Cong., 1st Sess., 8 (1924).[14] It is obvious, of course, that when one tax-

---

[14] I have no hesitancy in recognizing that there is a possibility of abuse in the jeopardy-assessment system. See Note, Narcotics Offenders and the Internal Revenue Code: Sheathing the Section 6851 Sword, 28 Vand. L. Rev. 363 (1975); Note, Jeopardy Terminations Under Section 6851: The Taxpayer's Rights and Remedies, 60 Iowa L. Rev. 644 (1975); Silver, Terminating the Taxpayer's Taxable Year: How IRS Uses it Against Narcotics Suspects, 40 J. of Tax. 110 (1974); Note, Jeopardy Assessment: The Sovereign's Stranglehold, 55 Geo. L. J. 701 (1967); *Willits* v. *Richardson,* 497 F. 2d 240, 246 (CA5 1974). But this possibility is also present with respect to a jeopardy assessment under § 6861. And it is present, too, perhaps with even greater force, in those tax situations (excise, FICA, etc.) where jurisdiction of the Tax Court does not exist and the taxpayer has no ability to litigate prior to payment or seizure. These dif-

payer dishonestly evades his share of the tax burden, that share is shifted to all those who comply with the law. This balance of "hardship" doubtless was in the minds of those who formulated the statutory structure.

It has long been established, moreover, that there is no constitutional requirement for a prepayment forum to adjudicate a dispute over the collection of a tax. *Phillips* v. *Commissioner,* 283 U. S. 589, 595–596 (1931). There, in an opinion by Mr. Justice Brandeis, the Court unanimously held that the taxing authorities may lawfully seize property for payment of taxes in summary proceedings prior to an adjudication of liability where "adequate opportunity is afforded for a later judicial determination of the legal rights." *Id.,* at 595. See *Fuentes* v. *Shevin,* 407 U. S. 67, 91–92, and n. 24 (1972).

In *Phillips* the Court noted the availability of two alternative mechanisms for judicial review in that particular situation: a refund action, or immediate redetermination of liability by the Board of Tax Appeals. In response, however, to a complaint by the taxpayer there that if the Board remedy were sought, collection would not be stayed unless a bond were filed, Mr. Justice Brandeis dismissed the contention with the observation:

"[I]t has already been shown that the right of the United States to exact immediate payment and to

---

fering degrees of tax comfort, in my view, do not render the system, or parts of it, unconstitutional. Prior to 1924, as has been pointed out, there was no prepayment forum at all.

I do not condone abuse in tax collection. The records of these two cases do not convincingly demonstrate abuse, although Mrs. Hall's situation, as it developed after the initial critical moves by the Service, makes one wonder. I have no such concern whatsoever about Mr. Laing. In any event, abuse is subject to rectification otherwise, and the Congress and the courts surely will not be unsympathetic. Cf. *Bivens* v. *Six Unknown Fed. Narcotics Agents,* 403 U. S. 388 (1971).

relegate the taxpayer to a suit for recovery, is paramount. The privilege of delaying payment pending immediate judicial review, by filing a bond, was granted by the sovereign as a matter of grace solely for the convenience of the taxpayer." 283 U. S., at 599–600.

Thus, the Court made clear that a prepayment forum was not a requirement of due process. I see no reason whatsoever to depart from that rule in these cases, where the taxpayer may file an action for refund after at most six months from the seizure of his assets or other action taken by the IRS under § 6851.

Accordingly, I dissent. I would affirm the judgment of the United States Court of Appeals for the Second Circuit in No. 73–1808, and I would reverse the judgment of the United States Court of Appeals for the Sixth Circuit in No. 74–75 and remand that case to the United States District Court for the Western District of Kentucky with directions to dismiss the complaint.